**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Terrance Alan EDDY, Defendant-Appellant.**

No. 83–5675.

United States Court of Appeals, Sixth Circuit.

Argued April 10, 1984.

Decided June 21, 1984.

Rehearing Denied Sept. 21, 1984.

**565**

R. Neal Walker, Federal Public Defender (argued), Lexington, Ky., Court appointed, for defendant-appellant.

Louis DeFalaise, U.S. Atty., Fred A. Stine (argued), Lexington, Ky., for plaintiff-appellee.

Before ENGEL and MARTIN, Circuit Judges, and WEICK, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

Terrance Alan Eddy appeals his conviction for perjury pursuant to 18 U.S.C. § 1623(a):

Whoever under oath ... in any proceeding before ... any court of the United States knowingly makes any false material declaration ... shall be fined not more than $10,000 or imprisoned not more than five years, or both.

In October 1982, Eddy was indicted under 18 U.S.C. § 1014 for knowingly making a false report or statement for the purpose of influencing the action of a federally insured bank. See United States v. Terrance Alan Eddy, Pikeville, Kentucky, Eastern District of Kentucky Indictment No. 82–14. Eddy was acquitted by a jury of the charge. On May 2, 1983, Eddy was indicted on two counts of perjury. He was charged with giving false testimony while being cross-examined during an in camera hearing in the earlier criminal case. In response to the perjury indictment, Eddy filed several pretrial motions, including motions to dismiss the indictment because the prosecutor's questions were ambiguous, the indictment failed to set forth the precise falsehoods charged, and the decision to prosecute Eddy was motivated by vindictiveness. All of Eddy's motions were overruled on the first day of trial, July 26, 1983. On July 27, a verdict of guilty was returned on both counts. Eddy was sentenced to five years in prison on each count, with directions that a psychiatric study be conducted within ninety days pursuant to 18 U.S.C. § 4205(c). The district judge also directed that after the psychiatric study Eddy be returned to the district court for a possible modification of his sentence.

The statements which were the basis of the perjury indictment were made in a hearing in chambers where the United States sought to prove that Eddy had used an Ohio State University College of Medicine diploma and an Ohio State University college transcript in efforts to enlist as a physician in the United States Navy. Count I of the indictment for perjury was based upon the following dialogue.

PROSECUTOR: Are you the same Terrance Alan Eddy that on or about March 20, 1981, contacted the Navy Medical Programs Recruiter for the Navy Recruiting District of Jacksonville, Florida?

EDDY: Yes, sir.

PROSECUTOR: Claiming to be a doctor graduated from the Ohio State University School of Medicine?

EDDY: No, sir.

PROSECUTOR: And expressing a desire to join the Navy as a doctor?

EDDY: No, sir.

PROSECUTOR: And as proof or as part of your personal history submitted a diploma from the Ohio State University College of Medicine?

EDDY: No, sir.

PROSECUTOR: And official college transcript?

EDDY: No.

Count II was based on the following:

PROSECUTOR: Mr. Eddy, do you think if you applied for staff privileges

at a hospital as a physician, do you think you would remember doing it?

EDDY: I would suppose so, yes, sir.

PROSECUTOR: Do you think you would remember doing an act like that?

EDDY: Do I remember? No, sir.

PROSECUTOR: Do you think you would remember doing it, if you did it?

EDDY: I would guess so, yes, sir.

PROSECUTOR: In that case, I would ask you the question again. Are you the same Terrance Alan Eddy who attempted to gain staff privileges at the Putnam County Community Hospital in Palatka, Florida, and in doing so showed credentials from the Ohio State University and a certificate from the Board of Medical Examiners from the State of Florida indicating that you were licensed to practice medicine in that state? And I think we can take that to mean you represented yourself as a physician. Did you do that?

EDDY: Like I said, I don't remember going there. I don't remember doing this action. No, sir.

Here, Eddy argues the United States failed to prove that his declarations were false. In response it is argued that Eddy's claims that his declarations were literally true provide no protection from a perjury conviction because the falsity of the statements and the questions were sufficiently clear to withstand a vagueness challenge.

We address first the argument by Eddy that his testimony was the literal truth. In *Bronston v. United States*, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973), the Court held a witness may not be convicted of "perjury for an answer, under oath, that is literally true but not responsive to the question asked and arguably misleading by negative implication." *Id.* at 353, 93 S.Ct. at 597. In *Bronston*, the defendant had petitioned for an arrangement with creditors under old Chapter XI of the Bankruptcy Act. At a hearing to determine the location of certain assets connected with the company, the following exchange between Bronston and a lawyer occurred:

Q. Do you have any bank accounts in Swiss banks, Mr. Bronston?

A. No, sir.

Q. Have you ever?

A. The company had an account there for six months, in Zurich.

Q. Have you any nominees who have bank accounts in Swiss banks?

A. No, sir.

Q. Have you ever?

A. No, sir.

As a matter of later proven fact, Bronston once had a personal Swiss bank account, but did not have one at the time of his testimony. Bronston was later charged with and convicted of perjury based on the government's theory that he had answered the second question with "literal truthfulness but unresponsively addressed his answer to [his] company's assets and not to his own—thereby implying that he had no personal Swiss bank account at the relevant time." *Bronston*, 409 U.S. at 355, 93 S.Ct. at 598. Acknowledging that Bronston's testimony was not responsive and subject to conflicting interpretations when viewed as casual conversation, the Court nonetheless stated that "we are not dealing with casual conversation and the statute does not make it a criminal act for a witness to willfully state any material matter that *implies* any material matter that he does not believe to be true." 409 U.S. at 357–58, 93 S.Ct. at 599–600 (emphasis in the original). The Court noted that it is the "lawyer's responsibility to recognize [evasive testimony] and to bring the witness back to the mark, to flush out the whole truth with the tools of adversary examination." *Id.* at 359, 93 S.Ct. at 600. Also rejected was the claim that a perjury conviction could be founded upon an attempt by a witness to mislead his examiner.

A jury should not be permitted to engage in conjecture whether an unresponsive answer, true and complete on its face, was intended to mislead or divert the examiner; the state of mind of the witness is relevant only to the extent that it

bears on whether "he does not believe [his answer] to be true." *Bronston,* 409 U.S. at 359, 93 S.Ct. at 600. The Court dismissed the contention that the perjury statute could be broadly construed to apply to a situation where a witness makes "affirmative statements of one fact that in context constituted denials by negative implication of a related fact." *Id.* at 361, 93 S.Ct. at 601. It noted the perjury statute was not intended to cover unresponsive testimony that is untrue only by "negative implication," despite the misleading nature of such testimony. "It does not matter that the unresponsive answer is stated in the affirmative, thereby implying the negative of the question actually imposed." 409 U.S. at 362, 93 S.Ct. at 602. Where a witness initially succeeds in avoiding direct answers to an examiner's questions, it is the questioner's burden "to pin the witness down to the specific object" of his inquiry. *Id.* at 360, 93 S.Ct. at 601.

■ Although *Bronston* dealt with a conviction under 18 U.S.C. § 1621, its reasoning has been extended to 18 U.S.C. § 1623, the provision involved here. *United States v. Cowley,* 720 F.2d 1037, 1042 (9th Cir.1983); *United States v. Finucan,* 708 F.2d 838, 847 (1st Cir.1983); *United States v. Niemiec,* 611 F.2d 1207, 1210 (7th Cir.1980); *United States v. Tonelli,* 577 F.2d 194, 198 n. 3 (3d Cir.1978); *United States v. Crippen,* 570 F.2d 535, 537 (5th Cir.1978); *United States v. Paolicelli,* 505 F.2d 971, 973 (4th Cir.1974). As the Third Circuit has noted, in perjury cases, "[n]o guessing is tolerated [in the drafting of a perjury indictment] and the indictment must set out the allegedly perjurious statements and the objective truth in stark contrast so that the claim of falsity is clear to all who read the charge." *United States v. Tonelli, supra,* 577 F.2d at 195. In order to sustain a perjury conviction, the questions and answers which support the conviction must demonstrate both that the defendant was fully aware of the actual meaning behind the examiner's questions and that the defendant knew his answers were not the truth. *Bronston, supra,* 409 U.S. at 358–59, 93 S.Ct. at 599–600. "Once a defendant raises the affirmative defense of his belief in the truth of a statement, the burden is on the government to disprove this belief beyond a reasonable doubt." *United States v. Stassi,* 443 F.Supp. 661, 666–67 (D.N.J.1977). Vague and ambiguous questions are not acceptable. *See United States v. Wall,* 371 F.2d 398, 399–400 (6th Cir.1967), *cited with approval in Bronston,* 409 U.S. at 360, 93 S.Ct. at 600; *United States v. Finucan, supra,* 708 F.2d at 846–48; *United States v. Tonelli,* 577 F.2d at 200; *United States v. Cook,* 497 F.2d 753, 764 (9th Cir.1972) (Ely, J., dissenting).[1] *But cf. United States v. Bell,* 623 F.2d 1132, 1136 (5th Cir.1980) (defendant's understanding of the question is a matter for the jury to decide).

Count I of the indictment charges that Eddy's declarations were false because he did contact the Navy Recruiting District in Jacksonville, Florida, claiming to be a doctor, and "did submit a diploma from the Ohio State University College of Medicine and [an] official college transcript." Eddy, however, argues he spoke the literal truth because, though he concedes contacting the Navy, he maintains that he did not submit an "official" medical diploma or an "official" college transcript. He claims that the documents he submitted were novelty items not meant to be taken seriously.

---

1. The reasoning of Judge Ely's dissenting opinion eventually became the controlling authority in the *Cook* decision. Shortly after the Ninth Circuit issued its initial slip opinion in *Cook,* in which Judge Ely dissented, the Supreme Court decided *Bronston.* The *Cook* case was then remanded to the district court for reconsideration in light of *Bronston.* The district court again affirmed Cook's conviction and a second appeal followed. On that appeal, the Ninth Circuit reversed, noting that *Bronston* "essentially, tracked the reasoning set forth by Judge Ely in this case." *United States v. Cook,* 489 F.2d 286, 287 (9th Cir.1973). The Ninth Circuit then directed the publication of its initial opinions in *Cook* "believing that they, when reviewed in connection with *Bronston,* may be of some worth to those concerned with the law of perjury in the federal courts." Those opinions appear at *United States v. Cook,* 497 F.2d 753 (9th Cir.1972).

Therefore, according to Eddy, his negative response to the prosecutor's questions were the literal truth. Indeed, the record supports Eddy's claims. At the suppression hearing in question, the following exchange occurred between Eddy and the prosecutor concerning Eddy's activities in Florida in trying to join the Navy.

PROSECUTOR: Are you the same Terrance Alan Eddy who, on March 20, 1981, contacted the Navy Medical Programs Recruiter for the Navy Recruiting District of Jacksonville, Florida, claiming to be a doctor graduated from the Ohio State University of Medicine and expressing a desire to join the Navy as a doctor; and as proof of your credentials submitted a diploma from the Ohio State University College of Medicine and official college transcript?

THE COURT: Do you want to confer with Mr. Johnson [Eddy's trial counsel]?

DEFENDANT: No, sir.

PROSECUTOR: That's on or about March 20, 1981.

DEFENDANT: My attempt to join the Navy, yes, but conferring myself as a physician, no.

PROSECUTOR: Your Honor, may I ask with regard to his understanding of that question?

THE COURT: Yes, sir. Repeat that.

PROSECUTOR: Mr. Eddy, do you understand what I asked you?

DEFENDANT: (Nodded his head)

PROSECUTOR: Okay, I will repeat the question. Are you the same Terrance Alan Eddy that on or about March 20, 1981, contacted the Navy Medical Programs Recruiter for the Navy Recruiting District of Jacksonville, Florida, claiming to be a doctor graduated from the Ohio State University School of Medicine and expressing a desire to join the Navy as a doctor; and as proof of your credentials, provided a diploma from the Ohio State University College of Medicine and an official college transcript?

DEFENDANT: (There was no response.)

THE COURT: If you want to confer with Mr. Johnson, sir, the Court will give you an opportunity.

DEFENDANT: No, sir. It's a loaded question.

THE COURT: Yes, sir.

DEFENDANT: The reason being I applied to the Navy but not as a physician. I went, I wanted to go into the Navy.

PROSECUTOR: Mr. Eddy, you understand my question?

THE COURT: Let him answer the question.

PROSECUTOR: I am sorry.

DEFENDANT: I wanted to go into the Navy into the medical program, but not as a doctor. I never told them I was a doctor. I told them I wanted to go into their medical program because I understood they had a very good program. I did not apply as a physician.

PROSECUTOR: Did you represent yourself as a physician?

DEFENDANT: Not unless they took it different than I did.

PROSECUTOR: Submit false documentation?

DEFENDANT: Do they have false documentation that I did?

PROSECUTOR: I asked you the question.

DEFENDANT: No, sir.

THE COURT: You didn't submit a diploma to them?

DEFENDANT: It is not my recollection, Your Honor.

THE COURT: Read specifically.

PROSECUTOR: Pardon me?

THE COURT: Read specifically the documentation he was supposed.

PROSECUTOR: The documentation I am talking about, if we are talking about the entire documentation that was submitted, a statement of personal history, a diploma from the Ohio State University College of Medicine, official college transcripts. Those are the pertinent documentation. There is other documentation that was submitted I will read the Court, if the Court would like to hear it.

THE COURT: That is sufficient. Do you understand the question, sir?

DEFENDANT: Yes, sir.

THE COURT: Do you desire to talk to Mr. Johnson, your attorney?

DEFENDANT: I am fine, sir.

THE COURT: Okay.

PROSECUTOR: One other question, Your Honor.

THE COURT: Wait just a moment.

DEFENDANT: I have one answer to that. You have brought in as your witness yourself, a registrar, I believe, from Ohio State University who has stated I am not a doctor and I am not certified as a physician. If I am not certified as a doctor, how would I have an official transcript?

PROSECUTOR: Mr. Eddy, I simply asked you a question. You answered it.

As is evident from this dialogue, which occurred shortly before the testimony which was the basis of Count I of the perjury indictment, Eddy attempted to communicate that the documentation submitted to the Navy was falsified. Later it was admitted in the hearing that there was no evidence to rebut Eddy's claim that the documents were false. This admission resulted in the denial of the request to question Eddy, before the jury, concerning the questions which were the basis of Count I.

■ At the perjury trial, all witnesses agreed with Eddy's assertion that the documents he presented were not authentic. The Assistant United States Attorney in conceding this fact at a bench conference during the trial, stated:

> I don't think there is any doubt that the testimony adduced at trial has shown in fact that was not an actual OSU diploma and those are not actual copies of OSU transcripts. I obviously concede that. But the questions were asked at trial, the questions were asked at trial based upon the best available information to the United States at the time. I don't think that the fact that the evidence has developed that those were not an actual diploma and not an actual tran-

script is enough to support a motion for a judgment of acquittal.

Thus, it is undisputed that Eddy did not submit an "official" Ohio State University diploma and a genuine university transcript during his meetings with naval recruiters. Hence, Eddy's negative responses to the prosecutor's questions were the literal truth "in light of the meaning that *he*, not his interrogator, attributed to the questions and answers," *United States v. Cook,* 497 F.2d at 773 (emphasis in original), and therefore, could not support a perjury conviction. *Bronston,* 409 U.S. at 359, 93 S.Ct. at 600; *see also United States v. Wall,* 371 F.2d at 400 ("[T]he essence of the crime of perjury ... is the belief of the witness concerning the veracity of his testimony.") It is no answer to argue that Eddy's testimony was unresponsive or intentionally misleading. An "intent to mislead" or "perjury by implication" is insufficient to support a perjury conviction. *Bronston,* 409 U.S. at 359, 93 S.Ct. at 600; *United States v. Slawik,* 548 F.2d 75, 83–84 (3d Cir.1977). "[I]f the prosecutor never asks the critical question and never presses for an unequivocal answer the defendant may not be convicted of false swearing." *Slawik, supra,* 548 F.2d at 84.

Nor can Eddy's conviction be upheld because, as the United States contends, Eddy understood, or should have understood, the import behind the prosecutor's questions. "Precise questioning is imperative as a predicate for the offense of perjury." *Bronston,* 409 U.S. at 362, 93 S.Ct. at 602. If the Assistant United States Attorney sought to inquire about Eddy's submitting false documents, the burden was on the United States, and not the witness, to be concise and to the point. The perjury statute was not intended to extend situations where "a wily witness succeeds in derailing the questioner—so long as the witness speaks the literal truth. The burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry." *Bronston,* 409 U.S. at 360, 93 S.Ct. at 601.

**570**

We also reject the argument that, when a witness is confronted with ambiguous questions, it is for the jury to decide whether the witness has committed perjury. *Bronston* discredited this type of jury conjecture which is now contended should be permissible. *Bronston,* 409 U.S. at 359, 93 S.Ct. at 600. A contrary rule would allow a jury to infer from a witness' unresponsive answer to a vague question that the witness knew his testimony to be false. In expressly rejecting this, *Bronston,* 409 U.S. at 358, 93 S.Ct. at 600, the Court stated,

> Under the pressures and tensions of interrogation, it is not uncommon for the most earnest witnesses to give answers that are not entirely responsive. Sometimes the witness does not understand the question, or may in an excess of caution or apprehension read too much or too little into it.... It is the responsibility of the lawyer to probe; testimonial interrogation, and cross-examination in particular, is a probing, prying, pressing form of inquiry. If a witness evades, it is the lawyer's responsibility to recognize the evasion and to bring the witness back to the mark, to flush out the whole truth with the tools of adversary examination.

*See also United States v. Tonelli,* 577 F.2d at 200; *United States v. Slawik, supra,* 548 F.2d at 84 (petit jury should not be permitted "to resolve not only ambiguity of the interrogator's question and the defendant's response, but also the ambiguity of the grand jury's understanding of both question and response.")

■ Similarly, Eddy's conviction under Count II of the indictment must also be reversed and the indictment dismissed. The testimony charged to have been perjured, and used as the basis for Count II also occurred during the suppression hearing during Eddy's original trial. At one point Eddy was asked if he had applied for staff privileges at a hospital, would he remember doing so. Eddy responded in the affirmative. The following question was then asked:

PROSECUTOR: In that case, I would ask you the question again. Are you the same Terrance Alan Eddy who attempted to gain staff privileges at the Putnam County Community Hospital in Palatka, Florida, and in doing so showed credentials from the Ohio State University and a certificate from the Board of Medical Examiners from the State of Florida indicating that you were licensed to practice medicine in that state? And I think we can take that to mean you represented yourself as a physician. Did you do that?

EDDY: Like I said, I don't remember going there. I don't remember doing this action. No, sir.

The indictment charges that Eddy's response was false because he "did make [an] application for staff privileges at the Putnam Community Hospital, Palatka, Florida, and in so doing, represented himself to be a physician, showed credentials from the State of Florida indicating that he was licensed to practice medicine in that state." As with the situations in *Slawik, supra,* 548 F.2d at 83, and *Tonelli, supra,* 577 F.2d at 198, the second count in Eddy's indictment fails to specify the alleged falsehood in his testimony. The indictment does not precisely allege what was false about Eddy's response. It cannot be determined whether Eddy testified falsely because (1) he failed to remember going to Florida when in fact there was sufficient proof that he had remembered going there, or because (2) he denied ever going to Florida when in fact he knew he had been there. If the former, there is no factual basis in the indictment or the record itself to demonstrate the untruthfulness of Eddy's declaration. Because the indictment does not allege that Eddy's failure to remember was perjurious, it will not be so assumed. *United States v. Brumley,* 560 F.2d 1268, 1277 (5th Cir.1977). Nor is the latter interpretation appropriate in view of Eddy's equivocal response. Concededly, Eddy's answer was obscure, and may have misled the casual observer. Nevertheless, it was the Assistant United States Attorney's "responsibility to recognize [Eddy's] evasion

and bring him back to the mark, to flush out the whole truth with the tools of adversary examination." *Bronston,* 409 U.S. at 359, 93 S.Ct. at 600. This was not done. Here, the crucial question was hardly precise. In fact, it was a multiple question with at least four separate inquiries. Understandably, Eddy's answer reflected the same imprecision. "A charge of perjury, however, is not a substitute for careful questioning on the part of a prosecutor." *United States v. Tonelli, supra,* 577 F.2d at 198. In a perjury case, the defendant "may not be assumed into the penitentiary." *United States v. Brumley, supra,* 560 F.2d at 1277. Any reading of the charges found in Count II of the indictment leads one to believe that it has failed to set forth with sufficient clarity the precise falsehood alleged, the factual basis of that falsehood and the objective truth in "stark contrast so that the claim of falsity is clear to all who read the charge." *Tonelli,* 577 F.2d at 195.

The response to this argument is that as to both Count I and II, the holdings in *Bronston* and *United States v. Wall, supra,* are not applicable because neither dealt "with the situation where a defendant has given a 'yes or no' answer, the truth of which can be ascertained only in the context of the question posed." *See United States v. Cuesta,* 597 F.2d 903, 920 (5th Cir.), *cert. denied,* 444 U.S. 964, 100 S.Ct. 451, 62 L.Ed.2d 377 (1979); *United States v. Kehoe,* 562 F.2d 65, 68–69 (1st Cir.1977); *United States v. Chapin,* 515 F.2d 1274, 1280 (D.C.Cir.1975). We disagree. Although the facts in *Bronston* reveal that Bronston's conviction was based upon a response that was not a "yes or no" answer, the decision in no way indicates its reasoning is inapplicable to situations where a defendant's "yes or no" responses are literally true but unresponsive to the examiner's question. In *United States v. Abrams,* 568 F.2d 411, 421–23 (5th Cir.), *cert. denied,* 437 U.S. 903, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978), the court applied *Bronston* to reverse a conviction under 18 U.S.C. § 1623 where the defendant's "yes or no" answers were not "literally false."

In *Abrams,* as in the situation here, the questioner failed to "pin Abrams down" with precise questions concerning the charges raised against him. *Abrams, supra,* 568 F.2d at 423. Nothing in *Bronston* compels us to find that Eddy's literally true but unresponsive declarations are not covered by the rule set forth there. Criminal statutes generally are to be "strictly construed, and any ambiguity must be resolved in favor of lenity." *United States v. Emmons,* 410 U.S. 396, 411, 93 S.Ct. 1007, 1015, 35 L.Ed.2d 379 (1973). *Cf. Williams v. United States,* 458 U.S. 279, 102 S.Ct. 3088, 3092, 73 L.Ed.2d 767 (1982) (when interpreting a criminal statute, courts should be reluctant "to base an expansive reading on inferences drawn from subjective and variable 'understandings' "). Neither the language of 18 U.S.C. § 1623(a), nor the reasoning of *Bronston* support the government's contention that a defendant's "yes or no" answers, literally true but unresponsive, are sufficient to form the basis of a perjury conviction. The problem and annoyance of Eddy's unresponsive statements should have been "remedied through the 'questioner's acuity' and not by a federal perjury prosecution." *Bronston,* 409 U.S. at 362, 93 S.Ct. at 602; *see also United States v. Cook,* 497 F.2d at 765 ("[Im]proper to indict and prosecute an individual for perjury where the questions forming the basis of the charge are so vaguely and inarticulately phrased *by the interrogator* as to require the jury to probe the inner workings of the accused's mind to seek to ascertain which of several plausible meanings he attributed to the ambiguous inquiries when he gave the allegedly perjurious responses.")

■ A troubling aspect of this case concerns what we believe to be a "realistic likelihood of vindicativeness" in the institution of the perjury charges against Eddy after he had been acquitted of the initial criminal charges. *See United States v. Andrews,* 633 F.2d 449, 453 (6th Cir.1980) (en banc). While we recognize that an acquittal of a defendant following a trial on criminal charges is not a *per se* bar to a

subsequent perjury prosecution, *United States v. Sarno,* 596 F.2d 404, 407 (9th Cir.1979); *United States v. Fayer,* 573 F.2d 741, 745 (2d Cir.), *cert. denied,* 439 U.S. 831, 99 S.Ct. 108, 58 L.Ed.2d 125 (1978), we also recognize where the facts indicate no perjury indictment would have been brought had there been no acquittal of the defendant, a presumption of vindicativeness is raised. *See United States v. McFadyen-Snider,* 590 F.2d 654, 655 (6th Cir. 1979) (perjury indictment would probably not have been brought had defendant not succeeded in her appeal from an initial conviction); *cf. United States v. Goodwin,* 457 U.S. 368, 102 S.Ct. 2485, 2489, 73 L.Ed.2d 74 (1982) (presumption of vindictiveness applies only in cases in which a "reasonable likelihood of vindictiveness" exists).

This presumption is strengthened by a review of the record of Eddy's perjury prosecution. The declarations alleged to be perjurious in Count I of the indictment were in fact answers that were literally true. The declaration alleged to be perjurious in Count II was an obscure response to a multiple question which was inherently confusing and vague. In other words, the perjurious nature of Eddy's testimony was not manifest. This fact, combined with the knowledge that the initial criminal charges against Eddy resulted in the defendant's acquittal, leaves us convinced that there existed a "realistic likelihood of vindictiveness" in the institution of Eddy's perjury prosecution, and therefore, provides a second reason why his conviction under 18 U.S.C. § 1623 must be reversed.

Accordingly, the judgment of the district court is reversed and the indictment against Eddy is ordered dismissed.