UNITED STATES of America,
Plaintiff-Appellee,

v.

Tony Douglas EARP,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Alfred S. CHILDERS,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Billy CARRIGAN, Defendant-Appellant.

Nos. 86-5564 to 86-5566.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 11, 1986.

Decided March 6, 1987.

George Vernon Laughrun, II (Goodman, Carr, Nixon & Laughrun on brief), Kenneth T. Davies (Flannary & Davies on brief), Jeffrey Scanland Rupe, on brief, for defendants-appellants.

William Randall Yeomans, Dept. of Justice (Charles R. Brewer, U.S. Atty.; Kenneth Bell, Asst. U.S. Atty.; William Bradford Reynolds, Asst. Atty. Gen., Walter W. Barnett, Dept. of Justice, on brief), for plaintiff-appellee.

Before WIDENER, PHILLIPS and CHAPMAN, Circuit Judges.

WIDENER, Circuit Judge:

This case involves separate appeals, consolidated in this court and brought by three defendants, Tony Douglas Earp, Alfred S. Childers, and Billy Carrigan. Although the defendants make several assignments of error, only one issue merits full discussion. That issue presents the question of whether defendant Carrigan's conviction for making a false declaration under 18 U.S.C. § 1623(a) should be set aside on the ground that his testimony before the grand jury was not false but was, instead, literally true. Because Carrigan's statement was literally true, we reverse his conviction under § 1623(a) but affirm the other convictions of Carrigan and the other defendants in all respects.[1]

Carrigan was a member of the Alexander County unit of the White Knights of Liberty of the Ku Klux Klan (Klan) during 1982 and 1983. In the latter half of 1982 and in early 1983, a series of racially motivated cross burnings and shootings occurred in Alexander County and neighboring Iredell County. It is conceded that Carrigan participated in an attempted cross burning in the front yard of one John Grimes on November 27, 1982. It is this conduct of Carrigan and his testimony with respect to it that form the base of this prosecution for making a false declaration. On that date, Carrigan along with a group of other Klan members drove to Grimes' residence with a cross. As the others erected and tried to ignite the cross, Carrigan stood watch with a shotgun. When the group had trouble lighting the cross and when John Grimes opened the front door, they fled, leaving the unlit cross in Grimes' front yard.

In January, 1984, Carrigan appeared before a grand jury investigating the racially motivated burnings and shootings. During his testimony, the following questions and answers were made:

"Q. How do you feel about burning crosses at the residences of interracial couples?

A. I don't believe in it.

Q. Have you ever done it, sir?

A. *No, I haven't.*

Q. Are you permitted, then from Alexander County to go into Iredell County and burn crosses?

A. *I don't burn crosses anywhere.*

Q. Would the Klan permit you to do that?

A. No, ma'am."

The government charged that the answers underscored just above are false declarations, because Carrigan had "personally participated in the cross burning at the residence of John Grimes." In addition to this colloquy, the government offered the

---

1. Earp was convicted of conspiracy, 18 U.S.C. § 241, and two counts of making a false declaration under 18 U.S.C. § 1623; Childers was convicted of conspiracy, 18 U.S.C. § 241, and making a false declaration under 18 U.S.C. § 1623; Carrigan was convicted of conspiracy, 18 U.S.C. § 241, as well as making the false declaration under 18 U.S.C. § 1623 discussed in the text.

The defendants also raise questions relating to the introduction of evidence, the submission of a redacted copy of the indictment to the jury, and the failure to warn the defendants of their target-defendant status prior to their testifying before the grand jury. After fully examining these contentions, we conclude that no errors occurred. Therefore, we affirm all other aspects of the convictions except that of Carrigan under § 1623(a).

testimony of an FBI agent who testified that Carrigan told him that he (Carrigan) had lied to the grand jury. At the close of the government's case, Carrigan's motion for judgment of acquittal was denied by the district court, as it was at the close of all the evidence. The district court then submitted to the jury the question of whether Carrigan had made a false declaration when he testified as set forth above at the grand jury proceedings. The jury found Carrigan guilty, and we reverse.[2]

In *Bronston v. United States*, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973), the United States Supreme Court addressed an issue indistinguishable from that involved here: "whether a witness may be convicted of perjury for an answer, under oath, that is literally true but not responsive to the question asked and arguably misleading by negative implication." *Bronston*, 409 U.S. at 352–53, 93 S.Ct. at 597. In *Bronston*, the owner of a bankrupt company testified as follows:

> "Q. Do you have any bank accounts in Swiss banks, Mr. Bronston?
>
> A. No, sir.
>
> Q. Have you ever?
>
> A. The company had an account there for about six months, in Zurich.
>
> A. Have you any nominees who have bank accounts in Swiss banks?
>
> A. No, sir.
>
> Q. Have you ever?
>
> A. No, sir."

*Id.* at 354, 93 S.Ct. at 598. It was undisputed in *Bronston* that the owner had previously maintained a personal bank account in Switzerland for nearly five years, but did not do so at the time of questioning. *Id.* However, the government's theory of prosecution was that the answer to the second question, although literally true, unresponsively addressed the company's assets and not his own. *Id.* at 355, 93 S.Ct. at 598. This, the government argued, implied that the owner had no personal Swiss bank account during the relevant time. *Id.* This served as the basis for the owner's perjury conviction.

In reversing that conviction, a unanimous Court held that a literally true but unresponsive answer is to be remedied through the "questioner's acuity" and not the federal perjury statute. *Id.* at 362, 93 S.Ct. at 602. The Court explained "that the perjury statute is not to be loosely construed, nor the statute invoked simply because a wily witness succeeds in derailing the questioner—so long as the witness speaks the literal truth. The burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry." *Id.* at 360, 93 S.Ct. at 601 (citations omitted). This conclusion, the Court added, is not escaped even where the jury finds that the answerer intended to mislead the examiner. *Id.* at 359, 93 S.Ct. at 600. For even if the witness evades, it is the duty of the questioner to spot that evasion and "to flush out the whole truth with the tools of adversary examination." *Id.* at 358–359, 93 S.Ct. at 599–600.

Applying *Bronston* to the case at hand leads to the conclusion that Carrigan's perjury conviction must be set aside. Like the witness in *Bronston*, Carrigan's statements were literally true although his second answer was unresponsive. He did not burn a cross at Grimes' residence in November, 1982 as charged in the indictment. And, while he no doubt knew full well that he had on that occasion tried to burn a cross, he was not specifically asked either about any attempted cross burnings or even whether or not he was at or near the Grimes home the night in question or whether he participated in the Grimes incident. A review of the record demonstrates that in questioning other witnesses, the questioner was able easily to attain the requisite specificity by asking about specific dates and locations. However, in questioning Carrigan, the questioner simply did not probe deep enough to recognize any potential evasion. The government cannot now correct this failure by a prosecution for making a false declaration. *Bronston*, 409 U.S. at 362, 93 S.Ct. at 601. And the district court should not have allowed the

---

**2.** As noted above, Carrigan was also convicted, as were Earp and Childers, of conspiring to deprive others of their constitutional rights under 18 U.S.C. § 241.

jury to speculate whether or not Carrigan understood that the questions regarding cross burnings included the Grimes incident.[3]

Accordingly, Carrigan's conviction under 18 U.S.C. § 1623 is reversed and in all other respects the convictions are affirmed.

AFFIRMED IN PART, REVERSED IN PART.

---

**3.** The Court did state that a witness' state of mind is relevant to the extent that it bears on whether "he does not believe [his answer] to be true." *Bronston,* 409 U.S. at 359, 93 S.Ct. at 600. But that Carrigan believed all his answers to be literally true cannot be questioned, especially in light of the fact that they were ultimately proved to be literally true and the parties have proceeded under this assumption.