*734
 
 Opinion
 

 BOREN, P. J.—
 

 I. Factual and Procedural Background
 

 Petitioner, while undergoing voir dire by a judge, was asked the following question: “Anybody in your immediate family or yourself been arrested?” Petitioner answered: “One of my boys was arrested.” It was true that one of petitioner’s sons had been arrested. However, petitioner failed to reveal that he, too, had at one time been arrested. Later, the judge asked a “catchall” question which asked the potential jurors to disclose whether they knew anything which would cause them to be biased. Petitioner did not respond.
 
 [1]
 

 Petitioner was charged by information with perjury. (Pen. Code, § 118.)
 
 [2]
 
 Later, petitioner filed a section 995 motion to set aside the information. Relying on
 
 Bronston
 
 v.
 
 United States
 
 (1973) 409 U.S. 352 [93 S.Ct. 595, 34 L.Ed.2d 568] (Bronston) and
 
 In re Rosoto
 
 (1974) 10 Cal.3d 939 [112 Cal.Rptr. 641, 519 P.2d 1065, 69 A.L.R.3d 980]
 
 (Rosoto),
 
 petitioner asserted that a charge for perjury cannot be based on a statement which is literally true, even if the statement is misleading, unresponsive or leaves a false impression. The prosecution, citing
 
 People
 
 v.
 
 Meza
 
 (1987) 188 Cal.App.3d 1631 [234 Cal.Rptr. 235]
 
 (Meza),
 
 argued that prospective jurors may be prosecuted for peijury based on an “omission” to the court during voir dire. When the trial court denied petitioner’s motion to dismiss, this petition for writ of mandate followed.
 

 II. Contentions
 

 Petitioner contends the trial court erred in denying his motion to dismiss the perjury charge because, while his answer to the court’s question during voir dire may have been misleading, it was literally true.
 

 The People contend that petitioner may be prosecuted for perjury based on his “misleading response” to the court during voir dire since “jury selection is not an adversarial proceeding.”
 

 
 *735
 
 HI. Discussion
 

 A.
 
 Elements of Perjury
 

 In order to lawfully hold a person to answer on the charge of perjury under section 118,
 
 [3]
 
 evidence must exist of a “willful statement, under oath, of any material matter which the witness knows to be false. [Citation.]”
 
 {People
 
 v.
 
 Howard
 
 (1993) 17 Cal.App.4th 999, 1004 [21 Cal.Rptr.2d 676] ,)
 
 [4]
 

 B.
 
 The Law of Perjury
 

 1.
 
 Perjury During Adversarial Hearings
 

 In
 
 Bronston
 
 the United States Supreme Court held that a witness may not be “convicted of perjury for an answer, under oath, that is literally true but not responsive to the question asked and arguably misleading by negative implication.”
 
 (Bronston, supra,
 
 409 U.S. at p. 353 [93 S.Ct. at p. 597].)
 

 The defendant, Samuel Bronston, was the president and sole owner of Samuel Bronston Productions, Inc., a movie production company. He had personal as well as company bank accounts in various European countries. The company petitioned for bankruptcy. At a bankruptcy examination, the following colloquy occurred between the lawyer for a creditor and Bronston:
 

 “Q. Do you have any bank accounts in Swiss banks, Mr. Bronston?
 

 “A. No, sir.
 

 “Q. Have you ever?
 

 “A. The company had an account there for about six months, in Zurich.
 

 “Q. Have you any nominees who have bank accounts in Swiss banks?
 

 “A. No, sir.
 

 
 *736
 
 “Q. Have you ever?
 

 “A. No, sir.”
 
 (Bronston, supra,
 
 409 U.S. at p. 354 [93 S.Ct. at p. 598].)
 

 In actuality, Bronston had once had a large personal bank account in Switzerland for about five years. However, Bronston’s answers were literally truthful. Bronston did not at the time of questioning have a Swiss bank account. Bronston Productions, Inc., did have the account in Zurich described by Bronston. Neither at the time of questioning nor before did Bronston have nominees who had Swiss accounts.
 
 (Bronston, supra,
 
 409 U.S. at pp. 354-355 [93 S.Ct. at pp. 597-598].)
 

 Bronston was tried for perjury.
 
 [5]
 
 The government’s theory at trial was that in order to mislead his questioner, Bronston answered the second question with literal truthfulness but unresponsively addressed his answer to the company’s assets and not to his own—thereby implying that he had no personal Swiss bank account at the relevant time.
 
 (Bronston, supra,
 
 409 U.S. at p. 355 [93 S.Ct. at p. 598].)
 

 The trial court concluded that Bronston’s answer could form the basis of a perjury charge, and instructed the jury that Bronston could be convicted if he gave an answer “ ‘not literally false but when considered in the context in which it was given, nevertheless constitute^] a false statement.’ ”
 
 (Bronston, supra,
 
 409 U.S. at p. 355 [93 S.Ct. at p. 598].) Bronston was convicted, and the appellate court affirmed.
 
 (Id.
 
 at p. 356 [93 S.Ct. at p. 599].)
 

 The United States Supreme Court reversed. It found that Bronston had answered the second question nonresponsively, and also found that a negative implication arose, from the answer that Bronston himself did not have any Swiss accounts. Nonetheless, the court held this was not perjury. “Beyond question [Bronston’s] answer to the crucial question was not responsive if we assume, as we do, that the first question was directed at personal bank accounts. There is, indeed, an implication in the answer to the second question that there was never a personal bank account; in casual conversation this interpretation might reasonably be drawn. But we are not dealing with casual conversation and the statute does not make it a criminal act for a witness to willfully state any material matter that
 
 implies
 
 any
 
 *737
 
 material matter that he does not believe to be true.”
 
 (Bronston, supra,
 
 409 U.S. at pp. 357-358 [93 S.Ct. at p. 599], italics added.)
 

 The
 
 Bronston
 
 court could “perceive no reason why Congress would intend the drastic sanction of a perjury prosecution to cure a testimonial mishap that could readily have been reached with a single additional question by counsel alert—as every examiner ought to be—to the incongruity of petitioner’s unresponsive answer.”
 
 (Bronston, supra,
 
 409 U.S. at p. 358 [93 S.Ct. at p. 600].) The court noted that “testimonial interrogation, and cross-examination in particular, is a probing, prying, pressing form of inquiry. If a witness evades, it is the lawyer’s responsibility to recognize the evasion and to bring the witness back to the mark, to flush out the whole truth with the tools of adversary examination.”
 
 (Id.
 
 at pp. 358-359 [93 S.Ct. at p. 600].) And, the court noted, “[i]t does not matter that the unresponsive answer is stated in the affirmative, thereby implying the negative of the question actually posed; for again, by hypothesis, the examiner’s awareness of unresponsiveness should lead him to press another question or reframe his initial question with greater precision. Precise questioning is imperative as a predicate for the offense of perjury, [¶] It may well be that [Bronston]’s answers were not guileless but were shrewdly calculated to evade. Nevertheless, . . . any special problems arising from the literally true but unresponsive answer are to be remedied through the ‘questioner’s acuity’ and not by a federal perjury prosecution.”
 
 (Id.
 
 at p. 362 [93 S.Ct. at pp. 601-602].)
 

 The
 
 Bronston
 
 holding was applied by the California Supreme Court in
 
 Rosoto.
 
 There, a hearing was held on a habeas corpus petition wherein an investigator for the prosecution (Frank Oxandaboure) was asked questions under oath concerning a key prosecution witness, Michael Rosoto. Oxandaboure stated that he had not given Rosoto immunity if he testified at an upcoming trial, and had not given a guarantee that Rosoto would not be prosecuted for unrelated crimes.
 
 (Rosoto, supra,
 
 10 Cal.3d at p. 947.) The truth of the matter was that Oxandaboure had given Rosoto conditional guarantees that he would receive immunity and not face further prosecution if he told the truth when he testified at trial.
 
 [6]
 

 (Id.
 
 at p. 947, fn. 5.)
 

 In a subsequent habeas corpus case the petitioners claimed Oxandaboure had lied during the previous habeas corpus hearing. The California Supreme
 
 *738
 
 Court held that although Oxandaboure had testified in a manner that left the impression that no guarantees of any kind had been given to Rosoto, Oxandaboure did not commit perjury.
 
 (Rosoto, supra,
 
 10 Cal.3d at pp. 949-950.) “Insofar as appears from the record before us Oxandaboure’s denials at the hearing on the prior reference of guarantees or assurances of immunity were literally true. The questions put to him asked whether he had guaranteed or assured Michael [Rosoto] immunity if he testified. The guarantee conversation occurred during investigation before charges were brought against petitioners, and the guarantee of immunity was conditioned not on merely testifying but on telling the truth. Oxandaboure was not required to volunteer testimony as to a guarantee other than the one of which he was asked, and although his answers to the questions asked may have left a misleading impression that not even a conditional guarantee was made, he was never asked whether a conditional guarantee of any kind was made.”
 
 (Id.
 
 at p. 950.)
 

 The court, citing
 
 Bronston,
 
 concluded that “. . . when, as here, a witness’ answers are literally true he may not be faulted for failing to volunteer more explicit information. Although such testimony may cause a misleading impression due to the failure of counsel to ask more specific questions, the witness’ failure to volunteer testimony to avoid the misleading impression does not constitute perjury because the crucial element of falsity is not present in his testimony.”
 
 (Rosoto, supra,
 
 10 Cal.3d at p. 949.)
 

 In
 
 U.S.
 
 v.
 
 Earp
 
 (4th Cir. 1987) 812 F.2d 917, during grand jury proceedings, a prosecutor investigating certain hate crimes asked the defendant whether he had ever committed a specific crime. The defendant answered truthfully in the negátive, because he had only aided others in the commission of the crime.
 
 (Id.
 
 at p. 918.) The defendant was convicted of perjury under 18 United States Code section 1623.
 
 [7]
 
 (812 F.2d at p. 919.) He appealed on the ground that his statement was literally true, and thus, under
 
 Bronston,
 
 he could not be convicted of making a false statement. In reversing the conviction, the court held that “a literally true but unresponsive answer is to be remedied through the ‘questioner’s acuity’ and not the federal perjury statute.”
 
 (Ibid.)
 
 Echoing
 
 Bronston,
 
 the court emphasized that “even if the witness evades, it is the duty of the questioner to spot that evasion and ‘to flush out the whole truth with the tools of adversary examination.’” (Ibid.; see also
 
 United States
 
 v.
 
 Lighte
 
 (2d Cir. 1986) 782 F.2d 367, 374;
 
 United States
 
 v.
 
 Eddy
 
 (6th Cir. 1984) 737 F.2d 564, 569;
 
 United States
 
 v.
 
 Tonelli
 
 (3d Cir. 1978) 577 F.2d 194, 199-200.)
 

 
 *739
 
 2.
 
 Perjury in a Nonadversarial Setting
 

 Although the United States Supreme Court implied in
 
 Bronston
 
 that silence can never constitute perjury, California rejected this proposition in
 
 Meza, supra,
 
 188 Cal.App.3d 1631.
 
 [8]
 

 Meza was a prospective juror in a burglary trial. Before voir dire commenced the court clerk administered an oath to all the potential jurors. The court then introduced the defendant and asked whether any of the potential jurors knew him. One raised his hand and another orally responded. The court inquired if there was anyone else. Meza remained silent and did not raise his hand. The court then asked a further series of questions, specifically directing jurors to raise their hands to indicate an affirmative response. One of the questions was whether there was any reason a juror could not be fair and impartial. Meza did not speak or raise his hand, and was selected as a juror.
 
 (Meza, supra,
 
 188 Cal.App.3d at p. 1634.) The trial court subsequently learned that Meza was the defendant’s brother-in-law, and discharged him.
 
 (Id.
 
 at pp. 1635, 1639.)
 

 The district attorney’s office brought a perjury charge against Meza for his failure to inform the judge that he was related to the defendant. Meza, arguing that failure to respond to questions could not constitute perjury, moved to set aside the information. The motion was granted.
 
 (Meza, supra,
 
 188 Cal.App.3d at pp. 1639-1640.)
 

 On appeal, the order dismissing the perjury charge was reversed. The court noted that the collective questioning of prospective jurors is a proper voir dire method, and held that a juror’s silence under those conditions is tantamount to a negative answer.
 
 (Meza, supra,
 
 188 Cal.App.3d at pp. 1641-1642.) In reaching its conclusion that silence can be construed as a statement, the court referred to Evidence Code section 125, which defines “conduct” as, inter alia, passive and nonverbal behavior, and Evidence Code section 225, which defines “statement” as nonverbal conduct. (188 Cal.App.3d at p. 1646.) The
 
 Meza
 
 court concluded, “When the trial judge asked if anyone on the jury panel knew the defendant... did Meza intend his silence to mean ‘No’ ? We think this is a question for the trier of fact.”
 
 {Id.
 
 at p. 1647.) Thus, if the trier of fact found Meza’s silence meant “No,” then Meza committed peijury.
 

 
 *740
 
 C.
 
 Petitioner’s Perjury Charge Must Be Dismissed
 

 1.
 
 Petitioner’s Response was Unresponsive, but Literally True
 

 Petitioner was asked the following imprecise, compound question: “Anybody in your immediate family
 
 or
 
 yourself been arrested?” (Italics added.) His answer—that one of his sons had been arrested—was partially unresponsive, but literally true. We conclude, therefore, that
 
 Bronston
 
 and
 
 Rosoto
 
 apply, and that no perjury charge is permissible.
 

 The People argue, in essence, that
 
 Bronston
 
 and
 
 Rosoto
 
 are inapplicable because petitioner did not give a “true and complete” answer to the second part of a two-part question. According to the People, the court asked petitioner whether anyone is his immediate family had been arrested,
 
 and
 
 whether petitioner had ever been arrested. The People claim that petitioner answered the first question fully and completely by stating that his son had been arrested, but failed to answer the second question. According to the People, only one conclusion is possible, i.e., that petitioner intended by his silence to convey the message that he had never been arrested. This being so, the People argue,
 
 Meza
 
 is applicable, and petitioner can be prosecuted for intentionally communicating a specific message through silence.
 

 Meza
 
 stands for the proposition that in some cases perjury convictions may be based on silence. Because it is consistent with the rule set forth in
 
 Bronston
 
 and
 
 Rosoto,
 
 we fully concur with the
 
 Meza
 
 holding.
 
 Meza
 
 cannot, however, be applied to the facts of this case. In
 
 Meza
 
 the judge, during collective questioning, told the potential jurors that failure to raise a hand in response to a question would constitute a negative answer. Meza’s inaction was, therefore, reasonably understood to signal a negative response to the questions posed by the judge. Petitioner’s prosecution for perjury is not based on the lack of an answer during collective questioning. Petitioner gave a literally true answer to a compound question which implied a negative implication.
 

 2.
 
 Bronston and Rosoto Apply in Nonadversarial Proceedings
 

 The People contend that even if petitioner’s answer can be construed as both true and complete, the rules set forth in
 
 Bronston
 
 and
 
 Rosoto
 
 are inapplicable because they apply only during adversarial proceedings.
 

 The People argue that at the heart of both
 
 Bronston
 
 and
 
 Rosoto
 
 is the role of the adversarial process as a truth-finding mechanism, and that both cases
 
 *741
 
 assume an adversarial proceeding which requires the examiner to ask proper questions. The People point out that in the voir dire setting potential jurors have an obligation to be cooperative because they take an oath under penalty of perjury to truthfully answer questions concerning their qualifications to serve as jurors. (Code Civ. Proc. § 232, subd. (a).)
 
 [9]
 
 Judges conducting voir dire—as they are now required to do in criminal cases under Proposition 115—must remain neutral and cannot become an advocate for either side. In reaching its conclusion that
 
 Meza
 
 could be tried for perjury, the Court of Appeal noted that the purpose of voir dire is to determine bias or prejudice of potential jurors, and that the right to an impartial jury is an inalienable part of the right to a jury trial guaranteed by the Constitution.
 
 (Meza, supra,
 
 188 Cal.App.3d at 1643.) “The existence of a trial juror’s actual bias, if not discovered early, furnishes grounds for a new trial.”
 
 (Ibid/, People
 
 v.
 
 Blackwell
 
 (1987) 191 Cal.App.3d 925 [236 Cal.Rptr. 803].) “The rule which affords a criminal defendant a fair and impartial jury is of constitutional dimension, firmly planted in this nation’s heritage, and is indisputably compelling.”
 
 (Meza, supra,
 
 188 Cal.App.3d at p. 1645.) The
 
 Meza
 
 court noted that a deceitful witness is distinct from a deceitful juror, because one who lies and later is accepted as a juror makes the trial a mere futility.
 
 (Id.
 
 at p. 1643.)
 

 There is no question that the prosecution, the defense and the trial court rely on the voir dire responses in making their respective decisions, and that if potential jurors do not respond candidly the jury selection process can be rendered meaningless. “Falsehood, or deliberate concealment or nondisclosure of facts and attitudes deprives both sides of the right to select an unbiased jury and erodes the basic integrity of the jury trial process.”
 
 (People
 
 v.
 
 Blackwell, supra,
 
 191 Cal.App.3d at p. 929; see also
 
 In re Hitchings
 
 (1993) 6 Cal.4th 97, 110 [24 Cal.Rptr.2d 74, 860 P.2d 466];
 
 People
 
 v.
 
 Diaz
 
 (1984) 152 Cal.App.3d 926, 932 [200 CalRptr. 77].)
 

 There is also no question that jurors are required to be cooperative, and should volunteer information about any matter which could be construed as
 
 *742
 
 rendering them biased. However, the judge has a corresponding duty. He or she is required first to ask direct and specific questions. In
 
 Meza,
 
 for example, the court asked a direct question which called for a single response. Although we are aware that the rules of evidence do not apply during voir dire, we believe the evils of the compound question are just as real during voir dire as they are during adversarial proceedings.
 
 [10]
 

 The court can, and should, bring the witness “back to the mark” when the witness fails to respond fully to a question. Here, for example, petitioner failed to respond fully to the court’s compound question. According to the People, there was nothing in petitioner’s answer which could have alerted the court or the parties that petitioner’s answer was misleading. We disagree. His answer, that “one of his boys” had been arrested could have meant that he had not been arrested, or could have meant that he was refusing to answer the question completely. Because the court phrased the question in the way in which it did, we believe the court had a duty to “pin down” the potential juror so that the answer was clear. Had petitioner refused to answer, the court could then have resorted to other remedies.
 

 The People claim that if we adopt petitioner’s view of jury selection, “the court would be required to cross-examine potential jurors and ferret out evasive answers,” and that “[j]ury service would become an ordeal to be feared.” In our opinion, if we adopt the People’s view, we may cause jurors to avoid jury service for fear of being prosecuted for the criminal offense of perjury because of a failure to volunteer information, or because of a failure to fully and completely answer a poorly crafted question which invites a misleading and/or incomplete answer.
 

 We conclude that the
 
 Bronston/Rosoto
 
 rule applies during the questioning of potential jurors because, in our view, a judge must be an “alert questioner” who can bring a potential juror “back to the mark” when necessary. This is especially true since both the prosecutor and defense counsel are available to suggest follow-up questions should they believe the answer given was misleading or nonresponsive.
 

 IV. Disposition
 

 The petition for writ of mandate is granted. The superior court is directed to set aside its order denying petitioner’s section 995 motion, and to
 
 *743
 
 enter a new and different order granting the motion. The temporary stay is vacated.
 

 Fukuto, J., and Nott, J., concurred.
 

 [1]
 

 The People contend, without much elaboration, that petitioner could be held for peijury based on his failure to speak up after the judge posed his catchall collective question to the potential jurors. The testimony at the preliminary hearing on this point was that at the end of voir dire, the judge asked his “catchall question to make sure that everything was brought to the Court’s attention.” However, the deputy district attorney did not have the exact words for that. Without knowing what exact words the judge used, and with a lack of evidence that petitioner was told that he had to respond to the inquiry, this is insufficient evidence to hold petitioner for perjury.
 

 [2]
 

 All further statutory references are to the Penal Code unless otherwise indicated.
 

 [3]
 

 Section 118, subdivision (a) provides: “Every person who, having taken an oath that he or she will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which the oath may by law of the State of California be administered, willfully and contrary to the oath, states as true any material matter which he or she knows to be false, and every person who testifies, declares, deposes, or certifies under penalty of perjury in any of the cases in which the testimony, declarations, depositions, or certification is permitted by law of the State of California under penalty of perjury and willfully states as true any material matter which he or she knows to be false, is guilty of peijury.”
 

 [4]
 

 Petitioner concedes for purposes of this petition that the “matter” at issue is material.
 

 [5]
 

 The federal perjury statute provides, in pertinent part, that “[w]hoever[,] [¶] (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true[,] [¶] . . . is guilty of perjury.” (18 U.S.C. § 1621.)
 

 [6]
 

 Oxandaboure was asked the following questions under oath: “Q. And was there any discussion of this particular matter, whereby there was any promise made that there would be no prosecution of [Michael] Rosoto if he helped you and testified? A. No sir. Q. Were there any assurances given to Michael Rosoto by you or anyone that Michael Rosoto would receive immunity if he testified? “A. I did not give him any. I know of no one else who did.”
 
 (Rosoto, supra,
 
 10 Cal.3d at p. 947.)
 

 [7]
 

 The false statement requirement of 18 United States Code section 1623 is the same as that of section 1621.
 

 [8]
 

 The
 
 Meza
 
 court rejected the suggestion found in
 
 People
 
 v.
 
 French
 
 (1933) 134 Cal.App. 694 [26 P.2d 310] that silence can never constitute perjury.
 
 (Meza, supra,
 
 188 Cal.App.3d at p. 1640.)
 

 [9]
 

 Code of Civil Procedure section 232, subdivision (a), provides: “Prior to the examination of prospective trial jurors in the panel assigned for voir dire, the following perjury acknowledgment and agreement shall be obtained from the panel, which shall be acknowledged by the prospective jurors with the statement ‘I do’: [¶] Do you, and each of you, understand and agree that you will accurately and truthfully answer, under penalty of perjury, all questions propounded to you concerning your qualifications and competency to serve as a trial juror in the matter pending before this court; and that failure to do so may subject you to criminal prosecution.” “[T]he oath of a prospective juror on his
 
 voir dire
 
 examination binds him, under the pains and penalties of perjury, to truthfully answer the questions that may be propounded to him by either court or counsel.”
 
 (In re De Martini
 
 (1920) 47 Cal.App. 228, 229-230 [190 P. 468].)
 

 [10]
 

 “The vice of the compound or duplicitous question is generally recognized. [Citations.]”
 
 (Board of Trustees
 
 v.
 
 Schuyten
 
 (1958) 161 Cal.App.2d 50, 54 [326 P.2d 223].)