RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0031p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

YOUNG MOON,

        *Defendant-Appellant.*

No. 06-5581

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 05-00003—Todd J. Campbell, Chief District Judge.

Argued: October 24, 2007

Decided and Filed: January 16, 2008

Before: MERRITT and CLAY, Circuit Judges; COX, District Judge.[*]

_____

## COUNSEL

**ARGUED:** T. Clifton Harviel, Jr., HARVIEL LAW OFFICE, Memphis, Tennessee, for Appellant. Ellen Bowden McIntyre, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee. **ON BRIEF:** T. Clifton Harviel, Jr., HARVIEL LAW OFFICE, Memphis, Tennessee, for Appellant. Samuel G. Williamson, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

_____

## OPINION

_____

     CLAY, Circuit Judge. Defendant, Dr. Young Moon, appeals from her conviction and sentence entered by the United States District Court for the Middle District of Tennessee on April 25, 2006, for three counts of health care fraud in violation of 18 U.S.C. § 1347 and one count of making false statements regarding health care matters in violation of 18 U.S.C. § 1001. Specifically, Defendant appeals 1) the district court's denial of her motion to dismiss count four of her indictment; 2) the district court's denial of her motion to suppress evidence; 3) the reasonableness of her sentence; and 4) the district court's evidentiary rulings with respect to "summary evidence." For the reasons that follow, we **AFFIRM** the district court's judgment.

_____

[*]The Honorable Sean F. Cox, United States District Judge for the Eastern District of Michigan, sitting by designation.

## BACKGROUND

### A.     Factual Background

Defendant, Young Moon, was a medical doctor licensed by the State of Tennessee, specializing in oncology and hematology. Defendant operated a medical practice in Crossville, Tennessee where she treated patients with various forms of cancer. As part of her practice, Defendant contracted with the State of Tennessee to provide medical treatment to patients pursuant to a state and federally funded health benefit program for the uninsured known as "TennCare." A number of providers participated in the program, including Blue Cross Blue Shield and Medicaid. Defendant routinely utilized chemotherapy medications such as Taxol, Camptosar and Procrit[1] in her treatment of cancer patients insured under the program. As a medical provider, Defendant was required to seek reimbursement for services, including medication, provided to patients under the insurance program.

In March of 2001, the Tennessee Bureau of Investigation ("TBI") received a complaint from one of Defendant's employees alleging that Defendant administered partial doses of chemotherapy medication while billing the insurance program for full doses. It was also alleged that the fraud was facilitated by the fact that Defendant mixed the cancer drugs she administered. The matter was referred to the Medicare Fraud Control Unit ("MFCU") of TBI and a joint investigation was initiated between the United States Department of Health and Human Services Office of Inspector General ("HHS-OIG") and TBI. After an initial investigation, agents from HHS-OIG and TBI conducted an "on site review" at Defendant's office.

On January 9, 2002, 10 agents associated with TBI, HHS-OIG and Blue Cross Blue Shield conducted an on-site review at Defendant's office. The objective of the review was to "scan TennCare, Medicaid and Medicare patient records" and secondarily to "interview Dr. Moon and all of her employees." (J.A. at 267) Members of the on-site review team were instructed that "attire will be business professional, no raid gear. All weapons, police paraphernalia shall be concealed." (*Id.*) On the morning of the review, three agents arrived, unannounced, at Defendant's office. The agents identified themselves, informed Defendant of a general complaint against her and requested permission to "scan" particular patient records. It is unclear whether Defendant was made aware of her right to withhold permission. After asking about the nature of the allegations and being told they were confidential, Defendant told agents it would be "fine" for them to scan the requested records and that agents could "scan whatever [they] needed to." (J.A. at 341) Defendant also provided agents with a location where they could scan the requested files.

During the on-site review, agents requested an interview with Defendant regarding her billing practices. Defendant agreed to be interviewed "as long as it did not interrupt patient care." (J.A. at 346) At one point, Defendant left the interview to attend to a patient. During the interview, Defendant stated that she always prescribed full doses of chemotherapy medication and never instructed her staff to give partial doses of medication.

---

[1]Taxol is a chemotherapy medication used by doctors to treat patients with cancer. It is a natural product that is derived from the bark of a Pacific yew tree, which was developed into a drug and approved for treatment of "an array of tumors." (J.A. at 757). Camptosar is also a natural product that was developed and approved for treatment of cancer, particularly colo-rectal cancer. Procrit is a medication used to treat the side effects of chemotherapy.

### B.       Procedural Background

After further interviews with employees, reviewing bills submitted to relevant health insurance programs and consultation with experts regarding Defendant's patient charts, the government sought an indictment for three counts of health care fraud.

#### 1.       Pretrial

On June 24, 2004, a grand jury sitting in the Middle District of Tennessee indicted Defendant on three counts of health care fraud in violation of 18  U.S.C. § 1347.  Subsequently, Defendant moved to dismiss the indictment, alleging that it failed to include an interstate commerce element. The district court agreed and granted Defendant's motion to dismiss.  The government returned with a superseding indictment that suffered from a similar infirmity and was also dismissed.  In response, the government sought and obtained a second superseding indictment that included the three original counts as well as an additional count alleging that Defendant made false statements to government agents in violation of 18 U.S.C. § 1001.  Defendant challenged the addition of the fourth count of the indictment in a motion to dismiss, alleging prosecutorial vindictiveness.  The district court denied Defendant's motion and the fourth count of the indictment proceeded to trial.

Defendant also moved to suppress evidence of the two files obtained from her office and statements she made during the TBI/HHS-OIG on-site review, alleging they were obtained during a warrantless search in violation of the Fourth Amendment.  After conducting a suppression hearing, the district court denied Defendant's motion to suppress, finding that Defendant consented to the search of her office based on her verbal assent during the on-site review.  Further, the district court found that Defendant's contractual relationship with TennCare and other insurance programs provided a basis for voluntary consent and therefore the denied the motion to suppress.

#### 2.       Trial

Defendant went to trial on all four counts enumerated in the superseding indictment and the government was permitted to introduce evidence obtained as a result of its warrantless search of Defendant's office.  The trial lasted just over two weeks.  During the trial, the jury heard testimony from former employees who recounted that Defendant had instructed them to "short" medication to patients.  The government presented evidence in the form of testimony by Dr. Mace Rothenberg, an expert witness who testified that Defendant could not have administered the amount of medication she billed as the patient side effects were too mild.  The government also presented evidence in the form of records from various pharmaceutical companies regarding Defendant's purchases of chemotherapy medication.  Despite Defendant's objection to the admission of the business records, the court ultimately ruled that the evidence was admissible under Federal Rule of Evidence 803(6).  In addition, Special Agent Robert Turner with HHS-OIG testified regarding Defendant's billing records, patient charts and drug purchases.  As part of his testimony, Agent Turner prepared chart summaries of Defendant's billing and purchasing as well as her administration of chemotherapy medication.  Again, Defendant objected, but the district court found the summaries to be admissible.

At the close of the trial, Defendant was convicted of all four counts enumerated in the second superseding indictment.

#### 3.       Sentencing

After Defendant's conviction on all four counts of the indictment, a Presentence Report ("PSR") was prepared in anticipation of sentencing.  For purposes of sentencing, the PSR recommended  grouping Defendant's convictions for health care fraud with her conviction for making a false statement.  The PSR further recommended a number of sentencing enhancements,

including enhancements for risk of bodily harm or death, vulnerable victims and obstruction of justice. Consequently, Defendant's total offense level was calculated at 34. The fact that Defendant had no prior criminal history placed her in Criminal History Category I. Together, the base offense level and Criminal History Category yielded an advisory Guidelines range of 151-188 months. On April 24, 2006, the district court conducted Defendant's sentencing hearing. During the hearing, the district court heard testimony from four family members of Defendant's deceased patients. Defendant objected to the admission of this testimony, contending that the patients were not "victims" of the offenses for which she was convicted. The court overruled the objection, noting that the testimony was "relevant to the nature and circumstances of the offense" under 18 U.S.C. § 3553(a). (J.A. at 1516)

The court also heard testimony from government witnesses regarding the harm that resulted from Defendant's conduct, including both economic loss and injuries to persons. Additionally, the court reviewed the PSR sentencing recommendations and heard arguments from counsel regarding objections to the PSR. The court rejected Defendant's objections to the application of enhancements for vulnerable victims, risk of death or bodily injury, and obstruction of justice. The district court, however, granted the government's request for an additional two level enhancement for a "large" number of vulnerable victims. The ruling increased the Guidelines range to 188 to 235 months. Defendant asked for a sentence at the lower end of the Guidelines range in consideration of mitigating evidence offered in the form of patient letters in her favor. After hearing the relevant evidence and testimony, the district court sentenced Defendant.

In sentencing Defendant, the district court acknowledged the advisory nature of the Guidelines and went on to make findings with respect to Defendant's conduct as related to the § 3553(a) factors. In a sealed statement of reasons and before the parties, the district invoked the § 3553(a) factors in sentencing Defendant and found it unnecessary "to tailor the sentence outside of the advisory Guideline Range in this case to comply with the mandates and purposes of § 3553(a)." (J.A. at 1515-16) Thereafter, the district court sentenced Defendant to 188 months, followed by two years of supervised release. Defendant was also ordered to pay restitution in the amount of $432,000.00 and was remanded into the custody of the United States Marshals.

Defendant now timely appeals.

## DISCUSSION

## I.    MOTION TO DISMISS COUNT FOUR OF THE INDICTMENT

### A.    Standard of Review

This Court reviews a district court's determination regarding the dismissal of a count in an indictment based on prosecutorial vindictiveness for abuse of discretion. *United States v. Suarez*, 263 F.3d 468, 476 (6th Cir. 2001).

### B.    Analysis

Defendant claims that the district court erred in denying her motion to dismiss the superceding indictment based on prosecutorial vindictiveness. Defendant maintains that the government had impermissible motives in seeking a second superseding indictment with an additional charge of making false statements in violation of 18 U.S.C. § 1001. We disagree.

It is well established that due process protects against prosecutorial retaliation for a defendant's exercise of a statutory or constitutional right. *United States v. Poole*, 407 F.3d 767, 774 (6th Cir. 2005) (citing *United States v. Goodwin*, 457 U.S. 368, 372 (1982)). Indeed, "[t]o punish a person because he has done something the law plainly allows him to do is a due process violation

of the most basic sort." *Goodwin*, 457 U.S. at 372 (internal citations omitted). However, "the Due Process Clause is not offended by all possibilities of increased punishment . . . , [] only by those that pose a 'realistic likelihood of vindictiveness.'" *United States v. Roach*, 502 F.3d 425, 443 (6th Cir. 2007) (quoting *Blackledge v. Perry*, 417 U.S. 21, 27 (1974)).

This Court considered the issue of prosecutorial vindictiveness in the pre-trial context in *United States v. Andrews*, 633 F.2d 449 (6th Cir. 1980) (en banc). We held that to prove a realistic likelihood of vindictiveness, a defendant must demonstrate that "the prosecutor has some 'stake' in deterring the petitioner's exercise of his rights, and that the prosecutor's conduct was somehow unreasonable." *United States v. Anderson*, 923 F.2d 450, 453-54 (6th Cir. 1991) (citing *Andrews*, 633 F.2d at 453-455); *United States v. Dupree*, 323 F.3d 480, 489 (6th Cir. 2003). Applying this standard, we find that the district court did not abuse its discretion by denying the motion to dismiss the second superseding indictment inasmuch as Defendant failed to demonstrate a realistic likelihood of vindictiveness.

As a threshold matter, Defendant must prove that the allegedly vindictive government action occurred following the exercise of a protected right. Defendant argues that she was punished for exercising her right to challenge the sufficiency of the indictment against her through a motion to dismiss. Certainly, raising such a challenge to an indictment is a protected right. The government concedes this point on appeal. Defendant, however, must also demonstrate that the government had a "stake" in deterring the exercise of her protected right. *Anderson*, 923 F.2d at 453-54.

In the instant case, Defendant's argument rests on the prosecutor's stake in deterring the exercise of the procedural right to put forth a motion to dismiss inasmuch as the prosecutor had to return to the grand jury on two occasions. However, the fact that the government had to return for a superseding indictment does not constitute a sufficient stake in deterring Defendant's exercise of a protected right.

In *United States v. Ewing*, 1994 WL 577055, at *3 (6th Cir. 1994), this Court faced a similar factual scenario. In *Ewing*, a defendant successfully moved to dismiss his indictment on one count of conspiracy to distribute cocaine base as a result of a violation of the Speedy Trials Act. Following the dismissal, the defendant was reindicted with the original charge as well as an additional charge for possession with intent to distribute cocaine base. *Id.* The defendant alleged that the additional charge resulted from prosecutorial vindictiveness. *Id.* On review, this Court held that "some repetition of prosecutorial efforts," in the form of a reindictment, did not constitute a sufficient "burden" to trigger a "realistic likelihood of vindictiveness" in the pretrial context. *Id.*

In the instant case, as in *Ewing*, there was also a "repetition of prosecutorial efforts" inasmuch as the government had to refile the indictment against the Defendant to allege that the health care fraud affected interstate commerce. While the government had a greater burden than in *Ewing*, as it had to refile two times, it does not change the fact that this repetition of efforts is not a sufficient "stake" in the outcome such that the prosecutor would seek to deter the exercise of the procedural right involved here. *See Durham v. United States*, 1986 WL 16833, at *4 (6th Cir. 1986) (unpublished) (finding no stake in deterring exercise of procedural right to sever trial despite repetition of prosecutorial efforts in relitigation of common issues). Indeed, as the Supreme Court has noted, motions to dismiss indictments are common as "[a] defendant before trial is expected to invoke procedural rights that inevitably impose some 'burden' on the prosecutor . . . " including motions "to challenge the sufficiency and form of the indictment." *Goodwin*, 457 U.S. at 381.

Pressing her claim, Defendant cites *United States v. Eddy*, 737 F.2d 564 (6th Cir. 1984), for the proposition that "where the facts indicate that an Indictment with new or additional charges would not have been brought had there been no acquittal of the defendant or dismissal of the charges, a presumption of vindictiveness is raised." (Def. Br. at 16) This Court's decision in *Eddy*,

however, is inapposite.  In *Eddy* this Court found a "realistic likelihood of vindictiveness" where the defendant was charged with perjury, *post-trial*, following an acquittal, not dismissal, on the initial criminal charge.  *Id.* at 572.  Here, unlike the post–trial setting, "no party is asked to 'do over what it thought it had already done correctly.'"  *Goodwin,* 457 U.S. at 383.  Consequently, there is less of a "burden" on the government at the pre-trial stage in seeking a new indictment, and thus, the government had less of a "stake" in deterring Defendant's exercise of a procedural right.

Moreover, to raise a "realistic likelihood of vindictiveness," Defendant must prove that the government's conduct was unreasonable.  Here, the government asserts that it did not bring the false statement charge in prior indictments because it did not want to delay the trial start date.  However, upon dismissal of the superseding indictment, this was no longer an issue.  Therefore, the government contends, the additional charge was put forward.  The district court credited this explanation and found the government's conduct to be reasonable.  We find that the district court did not abuse its discretion in reaching this conclusion given that at the pretrial stage, "the prosecutor's assessment of the proper extent of prosecution may not have crystallized."  *Goodwin*, 457 U.S. at 381.  Therefore, Defendant's motion to dismiss was properly denied.

## II.      MOTION TO SUPPRESS EVIDENCE

### A.      Standard of Review

Next, Defendant alleges that the district court erred in denying her motion to suppress evidence gathered during a warrantless search of her office.  In reviewing a district court's suppression determination, we review findings of fact for clear error, and legal conclusions *de novo*.  *United States v. Hudson*, 405 F.3d 425, 431 (6th Cir. 2005).  While we review the determination of the ultimate question of whether there was consent *de novo*, we must afford due weight to the factual inferences and credibility determinations made by the district court.  *United States v. Caruthers*, 458 F.3d 459, 464 (6th Cir. 2006).  Where a district court denies a motion to suppress, "we consider the evidence in the light most favorable to the government."  *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (en banc).

### B.      Analysis

The Fourth Amendment bars the government from conducting unreasonable searches and seizures.  This prohibition extends to both private homes and commercial premises.  *Marshall v. Barlow's Inc.*, 436 U.S. 307, 312 (1978).  Additionally, searches pursuant to criminal as well as administrative investigations must comport to the strictures of the Fourth Amendment.  *Michigan v. Tyler*, 436 U.S. 499, 506 (1978) (citing *Camera v. Mun. Court*, 387 U.S. 523, 528-29 (1967)).  Under the Fourth Amendment, searches "conducted without a warrant issued upon probable cause [are] *per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions."  *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

The well-delineated exception at issue here is consent.  If an officer obtains consent to search, a warrantless search does not offend the Constitution.  *Davis v. United States*, 328 U.S. 582, 593-94 (1946).  Indeed, "[a]n officer with consent needs neither a warrant nor probable cause to conduct a constitutional search."  *United States v. Jenkins*, 92 F.3d 430, 436 (6th Cir. 1996) (citing *Bustamonte*, 412 U.S. at 219).  Such consent, however, must be voluntary and freely given.  *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968).  Consent is voluntary when it is "unequivocal, specific and intelligently given, uncontaminated by any duress or coercion."  *United States v. McCaleb*, 552 F.2d 717, 721 (6th Cir. 1977).  The burden of proving that a search was voluntary is on the government, *id.*, and "must be proved by clear and positive testimony."  *United States v. Scott*, 578 F.2d 1186, 1188-89 (6th Cir. 1978).

"[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Bustamante*, 412 U.S. at 227; *see also United States v. Ivy*, 165 F.3d 397, 402 (6th Cir. 1998) (citing *United States v. Jones*, 846 F.2d 358, 360 (6th Cir. 1988)). As part of this inquiry, we consider the circumstances surrounding the search for "more subtle forms of coercion that might flaw [an individual's] judgment." *Bustamante*, 412 U.S. at 227.

We find that the district court's denial of the motion to suppress was not clearly erroneous inasmuch as Defendant voluntarily consented to the search of her office. The only evidence on the question of verbal consent was provided in the form of testimony by Agent Andy Corbitt of TBI at the suppression hearing. Agent Corbitt testified that three members of the TBI investigative team entered Defendant's office dressed in "business professional" attire, with weapons concealed. Agents identified themselves to Defendant, explained that there was an ongoing investigation and requested access to particular patient files. Defendant inquired about the nature of the investigation but was not informed of the specific nature of the allegations. Following this conversation, Defendant stated it would be "fine" for agents to access requested files and that they "could scan whatever [they] needed to." Further, Defendant provided agents with a space where they could scan the requested files.

Defendant, however, claims that the verbal consent was not voluntary as she merely acquiesced to a claim of lawful authority. Indeed, while mere acquiescence does not suffice to establish free and voluntary consent, *see*, *e.g.*, *Bumper*, 391 U.S. at 548-49, it does not appear from the record that Defendant's statement to government officials was "an expression of futility in resistence to authority or acquiescing in the officers' request." *United States v. Worley*, 193 F.3d 380, 386 (6th Cir. 1999). Defendant does not allege that government agents represented that they possessed a valid warrant to search her office, nor do Defendant's statements reflect that she felt powerless to prohibit the search. Rather, in agreeing to allow officers to scan records and conduct an interview, Defendant made it clear that she would maintain her ability to see patients. Such conduct does not speak of mere acquiescence. Based on the totality of the circumstances, we find that Defendant voluntarily consented to the search of her office and therefore the motion to suppress was properly denied. *See United States v. Elkins*, 300 F.3d 638, 648 (6th Cir. 2002) (finding defendant's consent to search of commercial premises to be voluntary where he replied "sure" when asked by officers to examine his office space and provided officers with ladder to assist with inspection). Because we find that Defendant verbally consented to the search of her office, we need not reach the question of whether her contract with TennCare provided a basis for consent to a warrantless search.

## III.    REASONABLENESS OF DEFENDANT'S SENTENCE

### A.    Standard of Review

This Court reviews challenges to the district court's sentencing determinations for reasonableness. *Gall v. United States*, 128 S. Ct. 586, 594 (2007); *United States v. Rita*, 127 S. Ct. 2456, 2459 (2007); *United States v. Booker*, 543 U.S. 220, 261 (2005).

In *Booker*, the Supreme Court severed the mandatory provisions of the Guidelines, thus rendering them advisory. *Booker*, 543 U.S. at 224. Consequently, "[t]he range of choice dictated by the facts of the case is significantly broadened." *Gall,* 128 U.S. at 602. While the choices available to district courts are varied, the goal of sentencing is the same: to impose a sentence that is sufficient, but "no greater than necessary" to comport with the purposes of 18 U.S.C. § 3553(a). 18 U.S.C. § 3553(a). In meeting this mandate, district courts are to consider the Guidelines together with other statutory goals embodied in § 3553(a). *Booker*, 543 U.S. at 246.

As the Supreme Court recently noted in *Gall v. United States*, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." 128 U.S. at 596. Indeed, "the Guidelines should be the starting point and the initial benchmark." *Id.* While the Guidelines begin the sentencing process, they do not end the inquiry of the district court. *Id.* Rather, after calculating the Guidelines, a district court is to consider the arguments of the parties with respect to the propriety of a particular sentence over another, while being guided by the statutory factors as set forth in § 3553(a). *Id.* After considering the arguments of the parties, the district court cannot simply rely on the advisory Guidelines range, but rather "must make an individualized assessment based on the facts presented." *Id.* at 597. "After settling on the appropriate sentence, [the district court] must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.*

On appeal, we review the sentence imposed by a district court for reasonableness utilizing the "familiar abuse of discretion standard." *Gall,* 128 U.S. at 594. The reasonableness inquiry has both procedural and substantive components. *United States v. Caver*, 470 F.3d 220, 248 (6th Cir. 2007). Therefore, we must "consider not only the length of the sentence but also the factors evaluated and the procedures employed by the district court in reaching its sentencing determination." *United States v. Webb,* 403 F.3d 373, 383 (6th Cir. 2005).

## B.       Analysis

Defendant challenges the sentence imposed by the district court under *Booker* based on procedural and substantive reasonableness. First, Defendant challenges the procedural reasonableness of her sentence, alleging that the district court improperly calculated the Guidelines range by applying sentence enhancements for vulnerable victims, risk of death or serious bodily injury and obstruction of justice. Second, Defendant challenges the substantive reasonableness of her sentence, alleging that the district court considered an impermissible factor when it heard testimony from family members of Defendant's deceased patients. After a thorough review of the record, we find that the district court did not err in sentencing Defendant.

### 1.       Procedural Reasonableness

When reviewing a sentence for procedural reasonableness, we must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence . . . ." *Gall,* 128 U.S. at 597. Our "reasonableness review focuses on the factors listed in § 3553(a), one of which is the Sentencing Guidelines themselves." *United States v. Duckro*, 466 F.3d 438, 442 (6th Cir. 2006).

We may conclude that a sentence is unreasonable when the district court "fails to 'consider' the applicable Guidelines range or neglects to 'consider' the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *United States v. Jones*, 489 F.3d 243, 250-51 (6th Cir. 2007) While the district court need not "engage in a ritualistic incantation" of the § 3553(a) factors, its opinion should be "sufficiently detailed to reflect the considerations listed in § 3553(a)" and to allow for meaningful appellate review. *United States v. McBride*, 434 F.3d 470, 474 (6th Cir. 2006). The district court's opinion must also provide some indication that the court considered the defendant's arguments in favor of a lower sentence and the basis for rejecting such arguments. *Jones*, 489 F.3d at 250-51.

### a.       Calculation of the Sentencing Guidelines

Defendant alleges that the district court erred in calculating the applicable Guidelines range, thus rendering her sentence procedurally unreasonable. As noted above, district courts are required

to "consult" the Guidelines as part of their consideration of the § 3553(a) factors. We have observed that "a district court's misinterpretation of the Guidelines effectively means that it has not properly consulted the Guidelines." *United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005). In reviewing a district court's application of the Sentencing Guidelines, this Court will "accept the findings of fact of the district court unless they are clearly erroneous and [will] give due deference to the district court's application of the Guidelines to the facts." *United States v. Williams*, 355 F.3d 893, 897-98 (6th Cir. 2003); 18 U.S.C. § 3742(e). A factual finding is clearly erroneous "when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Tran v. Gonzales*, 447 F.3d 937, 943 (6th Cir. 2006). We review a district court's legal conclusions regarding the Sentencing Guidelines *de novo*. *United States v. Latouf*, 132 F.3d 320, 331 (6th Cir. 1997).

Defendant argues that the district court erred in applying a sentencing enhancement for a "large number of vulnerable victims" and "risk of death or serious bodily injury." Additionally, Defendant alleges that the district court engaged in impermissible "double counting" in sentencing her to both 60 months for making false statements and enhancing her sentence under the Guidelines for obstruction of justice. We address each allegation in turn.

### 1.          Large Number of Vulnerable Victims

Under § 3A1.1(b)(1) of the Guidelines, a two-level enhancement is proper "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." A "vulnerable victim" is defined as a person who "is a victim of the offense of conviction and any conduct for which the defendant is accountable under 1.3 (Relevant Conduct); and . . . who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to criminal conduct." USSG § 3A1.1(b)(1), cmt 2. "Relevant conduct" is defined as "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." USSG § 1B1.3. Where there are a "large" number of vulnerable victims, the enhancement may further increase by two levels. USSG § 3A1.1(b)(2).

Defendant challenges the district court's application of the large number of vulnerable victims enhancement. Before the district court, Defendant did not challenge the district court's determination that a "large" number of vulnerable victims were affected by Defendant's behavior nor did Defendant challenge the district court's determination that her cancer patients were "vulnerable" within the meaning of the enhancement. Rather, Defendant alleges that the district court erred in characterizing her patients as "victims" and her administration of chemotherapy medication as "relevant criminal conduct." Defendant argues that only those parties who were actually defrauded as a result of her offenses of conviction constitute "victims" for sentencing purposes. The government, for its part, asserts that Defendant's patients were properly considered victims of Defendant's conduct as a result of the partial doses of medication she administered as part of her fraudulent billing scheme. For the reasons discussed below, we find that the district court properly applied the vulnerable victims enhancement to Defendant's "relevant criminal conduct."

As an initial matter, it appears that Defendant's patients are squarely within the class of "vulnerable victims" contemplated by the Guidelines to serve as a basis for the enhancement. The Application Commentary suggests that "[t]he adjustment would apply, for example, in a fraud case in which the defendant marketed an ineffective cancer cure . . . ." USSG § 3A1.1(b)(1), cmt. 2. We believe that the hypothetical presented in the commentary and the factual scenario of the case at bar are analogous. In this case, the Defendant was convicted of fraud which related to the amount of medication used in treating cancer patients. While her fraudulent conduct did not stem from

representations of a "cure" for cancer, Defendant did present an ineffective treatment for cancer as a central aspect of her fraud conviction.

Despite the language contained in the commentary, Defendant argues that her patients were not "victims" for purposes of the vulnerable victims enhancement. Defendant correctly notes that the application of the vulnerable victims enhancement is inappropriate where the statutory scheme defining the offense of conviction does not speak to the protection of individual victims but of broad societal interests. *See*, *e.g*., *United States v. Madden*, 403 F.3d 347, 350 (6th Cir. 2005) (vote sellers could not be deemed victims of a defendant convicted of violating a federal vote buying statute because "[t]he vote buying statute protects 'society at large' from corruption of the electoral process" rather than "individuals who value money more highly than their right to vote in a given election."); *United States v. Smith*, 139 F. App'x 681 (6th Cir. 2005) (unpublished) (same). However, it appears that Defendant's argument regarding "relevant conduct" is foreclosed by our decision in *United States v. Gawthrop*, 310 F.3d 405 (6th Cir. 2002).

In *Gawthrop*, we held that the vulnerable victims enhancement was properly applied based on "relevant conduct" as provided by the Guidelines, notwithstanding the fact that a societal interest or a governmental entity is the primary victim of the offense of conviction. *Id.* at 410-411. Although *Gawthrop* is a pre-*Booker* case, its reasoning nevertheless remains in force. Indeed, we have noted that while *Booker* severed the mandatory provisions of the Sentencing Guidelines, it "recognized that [t]he remainder of the [Sentencing Reform Act] functions independently." *United States v. Milan*, 398 F.3d 445, 456 (6th Cir. 2005) (internal citations omitted). Thus, where provided by the Guidelines, a district court may examine relevant conduct to determine the applicable Guidelines range, even if not captured as an element of the offense of conviction. *See United States v. Stone*, 432 F.3d 651, 654-655 (6th Cir. 2005).

In the case at bar, the district court considered evidence that Defendant provided partial doses of life-saving chemotherapy medication without notifying the patients that their doses were being so adjusted and without any medical justification. Defendant's act of depriving her patients of the opportunity to receive the full benefit of their treatment through her failure to administer the recommended dosage of medication certainly qualifies as "harm" within the meaning of the vulnerable victims enhancement. Significantly, this "harm" occurred during the course of Defendant's scheme to defraud a number of healthcare benefit programs. Accordingly, we see no error in the district court's application of the vulnerable victims enhancement on the basis of Defendant's conduct with respect to her patients, despite the fact that her offenses of conviction were fraud offenses.

### 2. Reckless Risk of Death or Serious Bodily Injury

Pursuant to § 2B1.1(b)(12), a two-level sentencing enhancement is appropriate where "the offense involved . . . the conscious or reckless risk of death or serious bodily injury." In seeking the enhancement, the government need only prove that Defendant's conduct created a risk of death or serious bodily injury by a preponderance of the evidence. *United States v. Dupree*, 323 F.3d 480, 491 (6th Cir. 2003). In the instant case, the district court applied this enhancement, over the objection of Defendant, after crediting the testimony of Dr. Mace Rothenburg, an expert witness for the government. Dr. Rothenburg testified that partial doses of chemotherapy medication, such as Procrit, would not result in the full beneficial effect of treatment such that the "patient is at higher risk for having their cancer progress or return and potentially die from that." (J.A. at 1378-1379) Based on the evidence that was before the district court with respect to risk of death or serious bodily injury, we conclude that there was no error in its application of the two-level enhancement.

### 3.          Obstruction of Justice

Lastly, Defendant challenges the district court's application of an enhancement for obstruction of justice pursuant to § 3C1.1.  At sentencing, Defendant's PSR recommended the application of a two-level enhancement for obstruction of justice.  Such an enhancement is proper where "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense."  USSG § 3C1.1.

Defendant asserts that the district court erred in its application of the two-level enhancement because it constitutes impermissible "double counting" inasmuch as she was already convicted of an offense relating to her obstructive conduct—i.e., lying to government agents.  In making this argument, Defendant relies on this Court's decision in *United States v. Farrow*,198 F.3d 179, 195 (6th Cir. 1999), which held that "impermissible 'double counting' occurs when precisely the same aspect of the defendant's conduct factors into his sentence in two separate ways."  On the other hand, this Court has also noted that where a defendant is penalized for "distinct aspects of the defendant's conduct, no double counting will be found."  *United States v. Eversole*, 487 F.3d 1024, 1030 (6th Cir. 2007) (citing *United States v. Perkins*, 89 F.3d 303, 310 (6th Cir. 1996)).

We find that the district court did not err in applying the two-level enhancement for obstruction of justice.  While Defendant correctly notes that impermissible double counting occurs where a defendant's conduct factors into her sentence in two separate ways, the rule applies with respect our evaluation of a single count.  *Farrow*, 198 F.3d at 193-194 ("If a single aspect of the defendant's conduct both determines his offense level and triggers an enhancement, [the] defendant's final offense level will be the same as that of a defendant who engages in two forms of conduct deemed punishable under the Sentencing Guidelines.").

In the case at bar, it appears that the two-level enhancement was applied to counts one through three, which relate to Defendant's conviction for health care fraud.  According to Defendant's PSR, "Count Four, False Statements Regarding Health Matters, is . . . grouped with Counts One through Three, because Court Four embodies conduct that is treated as an adjustment to the guidelines for the other counts." (J.A. at 1526)  Counts one through three concerned infractions for health care fraud, while count four separately involved the misrepresentations made by Defendant to the officers during their investigation of the health care fraud.  The misrepresentations made to the officers with respect to the health care fraud investigation constituted behavior by Defendant which subjected her to the obstruction of justice enhancement, but that behavior was not duplicative of the factual allegations involved in the health care fraud set forth in counts one through three.  Therefore, Defendant's specific conduct of lying to government agents did not factor into her sentence in two separate ways with respect to count four.  Thus, the sentencing scheme utilized by the district court does not constitute impermissible double counting.

### b.          Consideration of Section 3553(a) Factors and Explanation of the Sentence Imposed

In addition to properly calculating the Guidelines range, the record indicates that the district court considered the § 3553(a) factors and adequately explained the rationale for the imposition of a within Guidelines sentence.  For example, the district court demonstrated an understanding of the advisory nature of the Sentencing Guidelines and heard testimony regarding the factors enumerated in § 3553(a).  Additionally, the district court heard arguments from Defendant's counsel as well as Defendant herself.  In sentencing Defendant, the district court expressly invoked the § 3553(a) factors, including the seriousness of the offense and the need to afford adequate deterrence.  Therefore, we conclude that Defendant's sentence was procedurally reasonable.

**2.      Substantive Reasonableness**

In addition to procedural reasonableness, we must determine that a sentence is substantively reasonable. *United States v. Webb,* 403 F.3d 373, 383 (6th Cir. 2005). We have noted that a sentence may be substantively unreasonable where the district court "selects the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors or giv[es] an unreasonable amount of weight to any pertinent factor." *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006) (internal citations omitted). Sentences within a properly calculated Guidelines range are afforded a rebuttable presumption of reasonableness. *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006). Here, Defendant's sentence falls within the advisory Guidelines range of 188 to 235 months, and is thus entitled to a presumption of reasonableness.

At sentencing, the district court considered testimony from family members of Defendant's deceased patients. The family members testified regarding the treatment their family members received from Defendant and the emotional harm suffered as a result of not knowing whether sufficient medication was administered to their loved ones. Defendant contends that the district court considered an inappropriate factor when it heard such testimony. Defendant asserts that the patients' relatives were not "relevant" for purposes of § 3553(a) as they were not "victims" of the Defendant's offenses of conviction. We disagree.

Section 3553(a)(1) requires district courts to consider "the nature and circumstances of the offense . . . ." 18 U.S.C. § 3553(a)(1). The testimony of the family members was clearly relevant to the nature and circumstances of Defendant's health care fraud offenses. The fraud for which Defendant was convicted was part and parcel to the treatment rendered to her patients. Indeed, Defendant was convicted of the fraud offenses based on evidence that she deliberately administered partial doses of medication to her patients in order to reap the profit from payments made by health care entities for full doses of medication. The fact that Defendant involved patient care in her fraud offenses separates her from others who may defraud the government by other means. Clearly, the proximity of the fraud to patient care is an appropriate consideration for the district court to weigh as it determined the proper sentence to impose in the exercise of its judicial discretion.

Moreover, § 3553(a)(2)(A) requires district courts to consider the "need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." Under *Booker* and its progeny, the sentencing choices available to district courts in meeting the requirements of § 3553(a)(2) have "significantly broadened." *Gall,* 128 U.S. at 602. Consequently, the ability of district courts to weigh the factual circumstances regarding an offense to determine the appropriate sentence is paramount. In this case, the impact of Defendant's health care fraud on her patients is a factor, or factual circumstance, that the district court properly considered in evaluating the seriousness of the offense as well as the need to provide just punishment for the offense.

In sum, we conclude that the district court properly considered relevant factors as part of its required inquiry under § 3553(a). Therefore, Defendant's sentence is procedurally and substantively reasonable.

**IV.     ADMISSION OF EVIDENCE PURSUANT TO FEDERAL RULES OF EVIDENCE 803(6) AND 1006**

**A.      Standard of Review**

In her last assignment of error, Defendant challenges the district court's admission of evidence regarding her prior purchasing, billing and administration of chemotherapy drugs. We review an evidentiary determination by a district court for abuse of discretion. *United States v. Jamieson*, 427 F.3d 394, 409 (6th Cir. 2005).

**B.       Analysis**

Defendant challenges the district court's decision to admit the government's evidence regarding her drug purchases, administration and billing, claiming that its introduction in summary form was impermissible under Rule 1006. The government disputes this characterization of the evidence. While acknowledging that some of the evidence challenged was "summary evidence," and thus governed by Rule 1006, the government asserts that evidence of Defendant's drug purchases from various drug companies' computer records were properly deemed business records and admitted under Rule 803(6).

**1.       Evidence of Defendant's Business Records**

During Defendant's trial, the government introduced evidence regarding Defendant's purchases of Taxol, Camptosar and Procrit. Computer records of various drug companies served as the basis for such evidence. As part of its case in chief, the government called custodians of the drug companies to testify regarding the records of Defendant's purchases. Contrary to Defendant's assertions, the government insists that this evidence was properly admitted pursuant to Federal Rule of Evidence 803(6), which governs admission of business records.[2] Specifically, the government argues that the evidence provided by the drug companies constitute business records within the meaning of Rule 803(6). We agree.

In *United States v. Russo,* 480 F.2d 1228 (6th Cir. 1973), this Court found a computer generated "statistical run" to be a business record, rather than a summary, for purposes of the Federal Business Records Act. *Id.* at 1240. More recently, in *United States v. Catabran*, 836 F.2d 453 (9th Cir. 1988), the Ninth Circuit relied on *Russo* to find a computer generated business ledger to be a business record under Rule 803(6). *Id.* at 457. There, the court found that its treatment of "general ledgers as business records, not summaries," did not change because a computer produced the ledger. *Id.* Moreover, as the court noted, Rule 803(6) "specifically allows the admission of 'data compilation,' in any form." *Id.* Because of the similarities between the computer produced records at issue in *Russo* and *Catabran* and the evidence at bar, we find that the evidence of Defendant's drug purchases falls within the business records hearsay exception. Consequently, the district court did not err in admitting such evidence pursuant to Rule 803(6).

**2.       Summaries of Defendant's Business Records**

Defendant challenges the admission of "summary evidence" presented by the government in the form of charts created by HHS-OIG Special Agent Robert Turner. The charts offered into evidence summarized and compared the drugs Defendant purchased with the amount she claimed to administer. The charts also presented an estimate of the profits alleged to have resulted from Defendant's billing and purchase practices. In particular, Defendant challenges the propriety of the admission of the summaries under Rule 1006.

Rule 1006 provides, in pertinent part, that:

---

[2]This Court has explained that:

> A business record must satisfy four requirements in order to be admissible under Rule 803(6): (1) it must have been made in the course of a regularly conducted business activity; (2) it must have been kept in the regular course of that business; (3) the regular practice of that business must have been to have made the memorandum; and (4) the memorandum must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge.

*United States v. Jenkins*, 345 F.3d 928, 935 (6th Cir. 2003). In addition, "[t]his information must be presented through the testimony of the custodian or other qualified witness." *Id.* (quoting Fed. R. Evid. 803(6)).

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at [a] reasonable time and place.

In applying Rule 1006, this Court has held that the Rule imposes five requirements for the admission of summary evidence: (1) the underlying documents are so voluminous that they cannot be conveniently examined in court; (2) the proponent of the summary must have made the documents available for examination or copying at a reasonable time and place; (3) the underlying documents must be admissible in evidence; (4) the summary must be accurate and nonprejudicial; and (5) the summary must be properly introduced through the testimony of a witness who supervised its preparation. *United States v. Jamieson*, 427 F.3d 394, 409 (6th Cir. 2005). After considering the five requirements of Rule 1006, we find that the district court did not abuse its discretion in admitting the summary evidence.

First, the documents underlying the summary charts satisfy the voluminousness requirement inasmuch as the charts were based on raw data provided by drug companies and health programs which were billed by Defendant. Second, Defendant does not dispute the fact that all documents utilized to create the summaries were submitted or otherwise made available to her. Third, the documents that provided the basis for the summary charts were admissible as business records under Rule 803(6). *See Martin v. Funtime, Inc.*, 963 F.2d 110, 115 (6th Cir. 1992) (concluding personnel records admissible under 803(6) made summaries of such records admissible under Rule 1006). Fourth, Defendant has not alleged that the summaries were inaccurate or prejudicial. Fifth, the summaries were properly introduced through Special Agent Turner, who supervised their preparation. Thus, the summary evidence meets the standard for admissibility under Rule 1006. Therefore, the district court did not err in admitting into evidence the summary charts concerning drug transactions in Defendant's office.

## CONCLUSION

For the reasons stated above, we **AFFIRM** the judgment of the district court.