**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0733n.06

**No. 10-1572**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Nov 22, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff-Appellee,* | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| | ) | MICHIGAN |
| CARY GRIMM, | ) | |
| | ) | |
| *Defendant-Appellant.* | ) | |

BEFORE:    GILMAN and GRIFFIN, Circuit Judges; and Rose, District Judge.[*]

ROSE, District Judge.  Defendant-Appellant Cary Grimm appeals the sentence imposed upon him after revoking his supervised release, asserting that it is procedurally unreasonable.  Because we find that the sentence was not imposed in a manner that would constitute a procedurally unreasonable abuse of discretion, we disagree and AFFIRM.

I.    **Factual Background**

On February 24, 2003, Defendant-Appellant Cary Grimm pleaded guilty to possession with intent to distribute more than 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).  On June 20, 2003, the district court sentenced Grimm to 60 months of imprisonment and five years of supervised release.  Grimm was released from custody and began his term of supervised release on October 25, 2007.  The terms of his supervised release demanded, *inter alia*,

_____

[*]The Honorable Thomas M. Rose, United States District Court for the Southern District of Ohio, sitting by designation.

that Grimm not commit another federal, state, or local crime and that he not associate with anyone engaged in criminal activity or convicted of a felony unless permitted by his probation officer. Grimm was also required to answer all inquiries from his probation officer truthfully and follow the probation officer's instructions; and required to notify his probation officer within 72 hours of being arrested or questioned by law enforcement. As a special condition of supervised release, Grimm was also prohibited from associating with anyone using, possessing, or convicted of possessing controlled substances.

Over two years later, on December 9, 2009, however, Grimm drove a friend and known methamphetamine user to a convenience store to cash a counterfeit payroll check drawn from the account of a company Grimm owned. When the check failed to clear, store employees called the police. Grimm left the scene when the police arrived. During the investigation that followed, police found methamphetamine in the friend's purse, and she was subsequently convicted of felony possession of methamphetamine.

Police later interviewed Grimm about the payroll check. Grimm told the officers, falsely, that the friend worked for him. Afterwards, Grimm did not report his contact with law enforcement to his probation officer within 72 hours as required by the terms of his supervised release. Instead, he began contacting the probation officer with frequent requests to terminate his supervised release early. Grimm subsequently admitted to his probation officer that he knew the friend was a methamphetamine user. When asked whether he had used methamphetamine with her, Grimm replied "not while on probation." However, Grimm later admitted he had twice used drugs with the friend.

The next notable event during Grimm's term of supervised release occurred in January 2010, when his probation officer received a telephone call from the Michigan State Police, who informed the probation officer that Grimm was suspected of bank fraud. Grimm had secured and defaulted on a $50,000 loan from Hastings City Bank, and the Michigan State Police were investigating whether Grimm obtained the loan using collateral which did not belong to him. During a subsequent meeting with his probation officer, Grimm gave a long and confusing explanation of the circumstances surrounding the bank-fraud investigation. In an effort to clarify what had happened, the probation officer directed Grimm to report back on March 8, 2010, with a written statement detailing the circumstances of the loan, and records verifying several claims he made. Grimm did not report back on March 8, 2010, nor did he provide the requested documentation.

Meanwhile, on February 5, 2010, Grimm was arrested for domestic assault. According to the police report, Grimm pushed his girlfriend down some stairs and kicked her during an argument. Grimm told his probation officer that he and his girlfriend had been fighting a lot about money, and that they both assaulted each other the day of the incident.

On March 30, 2010, the United States Probation Office filed a petition to issue a warrant for Grimm's arrest based on six alleged violations of the terms and conditions of his supervised release. The petition alleged that Grimm: 1) failed to follow the probation officer's instructions by failing to report to the Probation Office as instructed on March 8, 2010; 2) failed to follow instructions by not submitting requested documentation on March 8, 2010; 3) associated with a person engaged in criminal activity on December 9, 2009; 4) failed to notify his probation officer within 72 hours of his contact with law enforcement on December 9, 2009; 5) associated with a person who was in

3

possession of a controlled substance; and 6) committed the crime of domestic assault on February 5, 2010. A Supervised Release Violation Report was also prepared. The report indicated that the advisory guideline term applicable to Grimm's violations was four to ten months of imprisonment. The Probation Office recommended a six-month term of custody and 18 months of supervised release to follow.

At a supervised release violation hearing on April 15, 2010, Grimm pleaded guilty to violations one through five, and no contest to violation six, based on the alleged domestic assault. At sentencing, the court invited defense counsel to speak on behalf of her client. Counsel argued that Grimm had been "doing well" on supervised release until he began abusing drugs again. She stated that Grimm was untruthful with his probation officer partly because he was disappointed in himself and ashamed. Counsel indicated that Grimm may have grown overconfident in his ability to manage his addiction, but he had not given up on himself, and he had "a lot of positives going for him." "[W]ith some help, perhaps some more intensive treatment for his addiction," counsel posited that Grimm could be successful. When asked, counsel acknowledged that Grimm had been "helped" before with treatment over the course of several years, but contended that treatment was sometimes necessary a number of times, and that Grimm was now sincerely interested in taking advantage of treatment.

Grimm, in turn, apologized to the court and to his probation officer for his behavior. He stated that he was ashamed that he had fallen, and that he could not believe he had to trade his multiple-year "NA" (Narcotics Anonymous) tag for a 30-day tag. Grimm explained that he thought he was strong enough that he would not have to continue with his "maintenance," but he was wrong.

The government called Grimm's probation officer to address the court. The probation officer stated that she was glad Grimm was finally being truthful, but indicated that, since preparing her supervised release violation report, she had received several police reports detailing additional incidents where Grimm issued checks with insufficient funds or counterfeit checks. One check was written from an account that was closed three years earlier. During another incident, Grimm opened a business bank account using a counterfeit $2,500 check. The probation officer stated that, had she known about these three most recent incidents, she would probably have recommended a term of custody longer than six months due to the sheer number of violations.

The district court then reasoned through its sentencing decision:

> Based upon the admission of guilt, as I said, and the finding of guilt of these supervised release conditions, supervised release is hereby revoked. The nature and circumstances of this subsequent behavior, the high risk of continued felonious behavior, and the maximum benefit of rehabilitation through incarceration leads this Court to the only conclusion it can arrive at in this matter, and that is that we have to come back and review this entire matter.

> This is sad because there was a rather, for Mr. Grimm, a rather substantial sentence imposed here many years ago as a result of some pretty egregious behavior involving methamphetamines, and together with programmatic issues that were obviously rather significant public investment, if you will, in the rehabilitation of Mr. Grimm. It appears that at this point he represents not only a danger to the community, but he represents a danger to himself unless this matter can get corrected.

> So pursuant to 18 United States Code 3583(e)(3), the defendant is hereby committed to the Federal Bureau of Prisons for a term of eight months. It appears that during that eight months the following will be the conditions of this Court, and that is that -- imposed upon him, and that is that he immediately receive drug abstinence counseling and screening and that he receive mental health assessment designed to ensure that if there are underlying mental health issues, that those are addressed.

> Mr. Grimm, are both your parents still living?

5

DEFENDANT GRIMM: My mother passed when I was in prison and my father's 71 years old.

THE COURT: And you are aware of the significant substance abuse history that they have?

DEFENDANT GRIMM: Yes, Your Honor.

THE COURT: So you are aware that if you continue with this matter, you are aware of where you're headed for?

DEFENDANT GRIMM: Yes, Your Honor.

THE COURT: I can't run your life. None of us can run your life. You have to take charge of yourself, and this is pathetic. This is absolutely pathetic.

I'm going to place you on 16 months of supervised release following the incarceration. The first six months of that 16 months will be you will reside in the residential reentry center in Grand Rapids. You will take part in their abstinence programs. You will have no association with anyone using or possessing drugs, and you will be given access to mental health counselors if in fact some form of medication is needed in this matter, although I'm not sure if that's not counterproductive sometimes.

No banking without the probation officer's approval. Full financial disclosure of everything, every penny you make and every penny you spend. No partnerships, businesses or associations entered into without supervised release officer approval.

I want to make one thing real clear with you, and that is if you come back here to this Court with this kind of sad record -- you're smart. You're intelligent. I don't think you maybe are -- well, anyway, you're intelligent enough to know where you're headed, and you're going to kill yourself, number one. Number two, I don't want you scamming other people, taking other people's money, and I sense we're almost on that unless we put a stop to that. And I don't want you to spend the rest of your life in prison. You'll be 39 years old here in a month, won't you?

DEFENDANT GRIMM: Yes, sir.

THE COURT: And a year from now you'll be 40. Time is slipping away for you, isn't it?

DEFENDANT GRIMM: Yes, sir.

6

THE COURT: So I think it's time you look at yourself psychologically, spiritually and physically and say to yourself, ["]Not only am I going to be a different person, but I'm going to surround myself with people that are differently oriented than I've been in the past.["] You appear to be a chameleon. You appear to be someone who changes with your friends. If you're with people that have got some kind of a deal going, you get into the deal. If you're in with people that are using drugs, you start using drugs. I think you have the ability to be a lot stronger than that. I know you do. It's a choice you have to make.

Now, I don't buy this business, and I know you do because that's part of the NA-AA [Narcotics Anonymous-Alcoholics Anonymous] theory, that you just somehow jump off the wagon. I think there's literature to the effect that you don't. You have a proclivity to do that, but you make a lot of choices along the way that can put you into temptation's path. And it's those choices that put you into temptation's path, friends you keep, places you go, times of the day you associate, those are the matters that are your troublesome aspect. You're not as tough as you think you are, so therefore, you're going to have to associate yourself with a different kind of people. You basically are who your friends are. You knew that from the time you were in first and second grade, and it's true today.

You have a right of appeal from this sentence. You have 14 days within which to file that appeal. You'll be remanded to the custody of the marshal for execution of this sentence.

Let me indicate here that all the other terms and conditions of supervised release will be appropriate in this matter. Those that relate to testing and treatment, those that relate to no use of alcohol, those that relate to not entering into any new credit without permission, those that require full-time employment as approved by the probation officer, those that require supporting of dependents, all those obligations will continue in this matter.

I expect better of you, Mr. Grimm, and again, I really don't want to see you again in this courtroom. You understand that?

DEFENDANT GRIMM: Yes, sir.

THE COURT: You understand why?

DEFENDANT GRIMM: Yes, sir.

THE COURT: I'm greatly disappointed.

7

Anything else, Ms. Woods?

MS. WOODS: No, Your Honor, thank you.

THE COURT: Anything else, Ms. Turek?

MS. TUREK: No, thank you, Your Honor.

THE COURT: That's all for the record.

On April 23, 2010, Grimm filed a timely notice of appeal.

## II.     Jurisdiction

The district court had jurisdiction in this case because Defendant-Appellant Cary Grimm, was indicted by a federal grand jury for alleged violations of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Thus, the District Court had jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## III.     Standard of Review

Generally, district court sentencing determinations are reviewed for reasonableness under an "abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 46 (2007); *Rita v. United States*, 551 U.S. 338, 361 (2007); *accord United States v. Booker*, 543 U.S. 220, 261 (2005). The reasonableness inquiry has both procedural and substantive components. *United States v. Caver*, 470 F.3d 220, 248 (6th Cir.2007). Thus, "we must 'consider not only the length of the sentence but also the factors evaluated and the procedures employed by the district court in reaching its sentencing determination.'" *United States v. Moon*, 513 F.3d 527, 539 (6th Cir. 2008) (quoting *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005)).

Procedural reasonableness requires that "the sentencing judge . . . 'set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority.'" *United States v. Klups*, 514 F.3d 532, 537 (6th Cir. 2008) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)). On review, an appellate court must

> ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range.

*Gall*, 552 U.S. at 51 ; *see Bolds*, 511 F.3d at 581. When a court imposes a term of imprisonment after revoking a defendant's supervised release, it must also be certain to consider the relevant statutory factors contained in 18 U.S.C. § 3583(e) and the policy statements contained in Chapter Seven of the Sentencing Guidelines Manual. *See*, *e.g.*, *United States v. Polihonki*, 543 F.3d 318, 323 (6th Cir. 2008); *United States v. Washington*, 147 F.3d 490, 491 (6th Cir. 1998) ("The statute's mandate is thus satisfied if . . . the district court's explanation of the sentence makes it clear that it considered the required factors."); *cf. United States v. Yopp*, 453 F.3d 770, 773 (6th Cir. 2006) (remanding where "there is no evidence of the district court's consideration of the Chapter Seven policy statements").

Pursuant to 18 U.S.C. § 3583(e) a court

may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(c), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . .

* * *

9

(3) revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post release supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release . . . .

Section 3553(a) directs sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)." *Id.* § 3553(a).  Paragraph two cites "the need for the sentence imposed– . . . (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." *Id.* § 3553(a)(2).  The other relevant portions of § 3553(a) instruct sentencing courts to consider: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (4) "the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to § 994(a)(3) of title 28"; (5) any pertinent policy statement issued by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and (7) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

The relevant Guidelines Manual policy statement acknowledges that "[w]hen the court finds that the defendant violated a condition of supervised release, it may continue the defendant on supervised release, with or without extending the term or modifying the conditions, or revoke supervised release and impose a term of imprisonment." U.S.S.G. ch. 7, pt. A, Introductory Comment 2(b); see U.S.S.G. § 7B1.3 (Revocation of Probation or Supervised Release (Policy

Statement)); see also supra note 3. Section 7B1.4 provides recommended imprisonment ranges based on a defendant's violation and criminal history. U.S.S.G. § 7B1.4.

Finally, this Court has suggested that district courts, after announcing a proposed sentence, "ask the parties whether they have any objections to the sentence . . . that have not previously been raised. If a sentencing judge asks this question and if the relevant party does not object, then plain-error review applies on appeal to those arguments not preserved in the district court." *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (*en banc*) (quotations marks omitted). In the instant case, however, the district court did not ask the parties whether there were objections to the sentence that had not yet been raised, so review is not for plain error.

## IV. Analysis

Defendant-Appellant Cary Grimm claims that the district court failed to give a reasoned explanation for the sentence it imposed, and further, that the court failed to explain why the sentence of eight months' imprisonment followed by six months in the half-way house as a condition of supervised release was "sufficient, but not greater than necessary" to comply with the statutory purposes of sentencing. This, however, is not the case.

The sentencing court considered "the nature and circumstances of the offense and the history and characteristics of the defendant." The sentencing judge stated, "The nature and circumstances of this subsequent behavior, the high risk of continued felonious behavior, and the maximum benefit of rehabilitation through incarceration leads this Court to the only conclusion it can arrive at in this matter[.]" The Court continued on to consider Grimm's history and characteristics, even inquiring as to whether his parents are still alive.

Similarly, the sentencing court considered the need "to protect the public from further crimes of the defendant . . . ." This is evidenced by the court's statement, "It appears that at this point he represents not only a danger to the community, but he represents a danger to himself unless this matter can get corrected."

The need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner" was also considered. The judge demanded,

> The first six months of [supervised release] you will reside in the residential reentry center in Grand Rapids. You will take part in their abstinence programs. You will have no association with anyone using or possessing drugs, and you will be given access to mental health counselors if in fact some form of medication is needed in this matter . . . .

Grimm relies primarily upon *United States v. Yopp*, 453 F.3d 770 (6th Cir. 2006), in which this Court vacated a sentence where the district court seemed to base the sentence imposed primarily upon the length of time necessary to obtain treatment while incarcerated, but then imposed a sentence of twice that length, without explanation. In the instant case, Grimm does not assert that the six-month term in a half-way house is not in alignment with the length of a term needed for treatment there.

## IV.     Conclusion

The record reflects that the sentencing court considered the statutorily mandated factors, thus precluding a conclusion that the sentence was arrived at in a procedurally unreasonable manner that amounts to an abuse of discretion. Therefore, we **AFFIRM** the judgement of the district court.